# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| VOTEVETS ACTION FUND; DEMOCRATIC NATIONAL COMMITTEE; and DSCC a/k/a DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE,<br><br>    Plaintiffs,<br><br>    v.<br><br>KENNETH W. DETZNER, in his official capacity as the Florida Secretary of State,<br><br>    Defendant. | Case No. _____ |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiffs VoteVets Action Fund, Democratic National Committee, and DSCC (collectively "Plaintiffs"), by and through the undersigned attorneys, file this COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF against Defendant KEN DETZNER, in his official capacity as Florida Secretary of State ("Defendant"), and allege as follows:

## NATURE OF THE CASE

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders,* 376 U.S. 1, 17 (1964). "Other rights, even the most basic, are

1

illusory if the right to vote is undermined." *Id.*

1. Plaintiffs bring this lawsuit, on an emergency and expedited basis, to protect this right and prevent the disenfranchisement of potentially thousands of Florida voters who lawfully mailed their ballots before November 6, 2018, but whose ballots were not received by the supervisor of elections by 7 p.m. on Election Day and therefore were not counted.

2. Unless relief is granted, local canvassing boards will have unconstitutionally rejected ballots that were postmarked before Election Day but, for reasons outside the voters' control, were not delivered to the supervisor of elections by 7 p.m. on November 6, 2018. The outright rejection of such ballots, based on arbitrary conditions—namely the timeliness of post office delivery—outside the voter's control unlawfully infringes upon the fundamental right to vote.

## JURISDICTION AND VENUE

3. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

4. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

5. This Court has personal jurisdiction over Defendant, who is sued in his official capacity only.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

7. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

8. Plaintiff VOTEVETS ACTION FUND ("VoteVets") advances the interest of veterans through voting rights. VoteVets is a 501(c)(4) organization that primarily focuses on nonpartisan education and advocacy on behalf of veterans and their families. It represents over 600,000 supporters nationally, including nearly 40,000 supporters in Florida. VoteVets has an interest in this litigation because it wants to protect the ability of veterans and all eligible voters to have their ballots counted. Moreover, VoteVets wants to ensure that military veterans vote as a means of using their political voice to support their interests and that veterans' votes are counted. Military veterans took an oath to defend and protect the constitution, which itself protects the right to vote: protecting the right to vote is thus inherent in

military veterans' sworn duty. In the absence of relief, VoteVets' members and constituents who mailed their vote by mail ballots before Election Day, but whose ballots were received after 7 p.m. on Election Day, will be disenfranchised.

9. Plaintiff DEMOCRATIC NATIONAL COMMITTEE ("DNC") is the national committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14), and its mission is to elect local, state, and national candidates of the Democratic Party to public office throughout the United States, including in Florida. The DNC works to accomplish its mission across the country and in Florida by, among other things, making expenditures for, and contributions to, Democratic candidates (at all levels) and assisting state parties throughout the country, including in Florida. The 7 p.m. receipt deadline on Election Day directly harms the DNC by frustrating its mission of, and efforts in, electing Democratic Party candidates to the U.S. Senate. In addition, in the absence of relief, the Democratic National Committee's members and constituents who mailed their vote by mail ballots before Election Day, but whose ballots were received after 7 p.m. on Election Day will be disenfranchised.

10. Plaintiff DSCC is the national senatorial committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14), and its mission is to elect candidates of the Democratic Party to the United States Senate, including in Florida. The DSCC works to accomplish its mission across the country and in Florida by, among other things, making expenditures for, and contributions to, Democratic candidates

for U.S. Senate and assisting state parties throughout the country, including in Florida. In 2018, the DSCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic Senate candidates, including several million dollars which were spent in Florida in support of Bill Nelson's re-election campaign. The 7 p.m. receipt deadline on Election Day directly harms the DSCC by frustrating its mission of, and efforts in, electing its Democratic Party candidate for Senate in Florida.

11.  Defendant KEN DETZNER is sued in his official capacity as Secretary of State of the State of Florida. Defendant Detzner is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law. Pursuant to Florida Statute § 97.012, the Secretary of State is the chief elections officer of the State of Florida and is therefore responsible for the administration of state laws affecting voting, including with respect to the general election on November 6, 2018.  As Secretary of State, Defendant Detzner's duties consist, among other things, of "[o]btain[ing] and maintain[ing] uniformity in the interpretation and implementation of the election laws." *Id.* at § 97.012(1). The Secretary of State is also tasked with ensuring that county supervisors perform their statutory duties, *see id.* at § 97.012(14); providing technical assistance to county supervisors on voter education, election personnel training services, and voting systems, *see id.* at §§

5

97.012(4)-(5); and "[p]rovid[ing] written direction and opinions to the supervisors of elections on the performance of their official duties with respect to the Florida Election Code or rules adopted by the Department of State." *Id.* at § 97.012(16).

## STATEMENT OF FACTS AND LAW

12. Vote by mail ("VBM") ballots are commonly used by Florida voters. "Both the overall number of VBM ballots, as well as the percentage of VBM ballots of all votes cast, have steadily ticked up over the past three presidential elections in the Sunshine State. In the 2016 general election, more than 2.7 million registered voters, some 28.7 percent of the 9.6 million Floridians who turned out to vote, cast their ballot by mail, up from the nearly 2.4 million registrants (or 27.8 percent of the electorate) who voted VBM in 2012."[1]

13. Continuing this trend, in the November 6, 2018 general election, nearly 3.5 million Florida voters requested to vote by mail.[2] But as of November 8, 2018, at 7:17 a.m., a staggering 874,818 of those VBM ballots had not yet been counted as returned.[3]

---

[1] Daniel A. Smith, *Vote-By-Mail Ballots Cast in Florida* 5, AM. CIV. LIBERTIES UNION FLA. (Sept. 19, 2018), https://www.aclufl. org/sites/default/files/aclufl_-_vote_by_mail_-_report.pdf.
[2] *Vote-by-Mail Request and Early Voting Reports*, FLA. DIVISION ELECTIONS, https://countyballotfiles.elections.myflorida.com/FVRSCountyBallotReports/AbsenteeEarlyVotingReports/PublicStats (last visited Nov. 8, 2018).
[3] *Id.*

14. With the exception of overseas voters, VBM ballots under current Florida law are only counted if they are received by the supervisor of elections by 7 p.m. on the day of the election. Fla. Stat. § 101.6103(5)(c) ("A ballot shall be counted only if. . . [i]t is received by the supervisor of elections not later than 7 p.m. on the day of the election."); Fla. Stat. § 101.67(2) ("[A]ll marked absent electors' ballots to be counted must be received by the supervisor by 7 p.m. the day of the election."). Ballots from overseas voters, however, may be counted if they are postmarked by Election Day and received by the supervisor of elections within 10 days after the date of the election. Fla. Stat. § 101.6952(5).

15. Conditioning the validity of ballots solely on an a "received by" date, rather than coupling the "received by" date *and* a postmark date—which is the case for overseas voters—all but ensures that qualified voters submitting VBM ballots can be denied the right to vote based entirely on arbitrary factors beyond their control, like mail delivery speed. For example, mail delivery can be delayed due to weather emergencies, human error causing bags of mail to be sent to the wrong transfer facility, traffic delays resulting in behind-schedule mail transfers, and understaffing at postal facilities causing mail to take longer to process and deliver than when fully staffed, among countless other potential scenarios.

16. Illustrating this point, one voter in Miami-Dade County reported that

he mailed his ballot on October 29, 2018—over a week before Election Day—yet learned *after* Election Day that his ballot had not been received by the supervisor of Elections.[4]

17. Compounding this problem, previous reasonable expectations of mail delivery speeds may no longer be reasonable in light of the United States Postal Service ("USPS") changes, which were not widely publicized. USPS recently elongated its standards for delivery of first-class mail. Previously, first-class postage was to be delivered within one to three days of mailing. But now that timeline has been stretched to two to five days.[5]

18. Extraordinary circumstances can also delay mail delivery and affect the voting process. For example, on October 25, 2018, the Miami-Dade Police and federal agents evacuated a USPS mail sorting and distribution center in Opa-locka due to a bomb scare.[6]

---

[4] *See* Jerry Iannelli, *Photos Show Scores of Uncounted Ballots in Opa-locka Mail Center*, (Nov. 9, 2018, 6:44 PM), MIAMI NEW TIMES, https://www.miaminewtimes.com/news/miami-ballots-are-still-inside-opa-locka-post-office-10899192.

[5] Melissa Santos, *'New Reality' of Vote-By-Mail Includes Delays and Problems with Postmarks*, NEWS TRIB. (NOV. 1, 2016, 12:18 PM), https://www.thenewstribune.com/news/politics-government/election/article110600307.html.

[6] Michelle Quesada, *Police Evacuate Mail Facility in Opa-Locka; Officers and Agents Seen In and Out of Building*, WPTV (Oct. 26, 2018, 5:18 AM),

19. Voters should not be disenfranchised solely due to the speed of the post office's delivery.

20. Coupling the eligibility of VBM ballots to be counted based on postmark date and the date by which the supervisor of election receives the ballots balances voters' ability to control the viability of their VBM ballots with election administrators' needs to conduct and certify vote counts in a timely manner.

21. To minimize the impact of arbitrary post office delivery timelines on the right to vote, numerous other states that allow absentee voting by mail take into account the date by which the supervisor of elections receives the ballot *as well as* the postmark date in determining whether to count the ballot. For example:

- Alaska: Postmarked by Election day and received 10 days after Election Day. AS § 15.20.081(e).
- Iowa: Postmarked one day before Election Day and received 6 days after Election Day. Iowa Code Ann. § 53.17(2), (3).
- Maryland: Postmarked by Election Day and received 10 days after Election Day. Md. Code Regs. § 33.11.03.08(B).
- New York: Postmarked 1 day before Election Day and received 7 days after Election Day. N.Y. Elec. Law § 8-412(1).

---

https://www.wptv.com/news/state/police-evacuate-mail-facility-in-opa-locka-officers-and-agents-seen-in-and-out-of-building.

- North Carolina: Postmarked by Election Day and received by 3 days after Election Day. N.C. Gen. Stat. Ann. § 163A-1310(b)(2)(b).
- North Dakota: Postmarked 1 day before Election Day and received 5 days after Election Day. N.D. Cent. Code Ann. § 16.1-07-09.
- Texas: Postmarked by Election Day and received by the day after Election Day. Tex. Elec. Code § 86.007(a)(2).
- Utah: Postmarked 1 day before Election Day and received 6 days after Election Day. Utah Code § 20A-3-306 (2)(b).
- Washington: Postmarked by Election Day and received 5 days after Election Day. Wash. Rev. Code § 29A.40.091(4).
- West Virginia: Postmarked by Election Day and received by 6 days after Election Day; ballots with no postmark are counted if received by 1 day after Election Day. W. Va. Code § 3-3-5(g).

22. Similarly, the U.S. District Court for the Middle District of Georgia recently extended, by three days, the deadline for the return of absentee ballots postmarked by Election Day in response to "a confluence of extraordinary circumstances," including the late delivery of VBM ballots to voters. The Court ordered that the Superintendent of Elections of Dougherty County "shall count and include in the certified election results" all VBM ballots "postmarked by November 6, 2018 [Election Day]" and "received on or before Friday, November 9, 2018, if

otherwise proper."[7]

23. The relief Plaintiffs seek here is a process already contemplated by Florida law and will not require any new administrative processes. Supervisors of elections already accept VBM ballots from overseas voters up to 10 days after Election Day. *See* Fla. Stat. § 101.6952(5) ("[a] vote-by-mail ballot from an overseas voter . . . which is postmarked or dated no later than the date of the election and is received by the supervisor of elections . . . no later than 10 days after the date of the election shall be counted as long as the vote-by-mail ballot is otherwise proper."). Thus, as of the date of this filing, supervisors of elections and canvassing boards are still *receiving* and counting VBM ballots.

24. Other Florida voting laws rely on postmark dates, as well. For example, Florida uses the postmark date as the relevant deadline for voter registration applications delivered by mail, if a clear postmark is present on the mailing envelope. *See* Fla. Admin. Code. Ann. r. 1S-2.042(7)(a). Only if a postmark cannot be determined on the face of the voter registration application does the State use the "received by" date. *Id.*

25. Because Fla. Stat. §§ 101.6103(5)(c) and 101.67(2) condition the eligibility of Florida voters' VBM ballots on the arbitrary and unpredictable event

---

[7] *Democratic Party of Georgia v. Burkes*, Case No. 1:18-cv-212 (M.D. Ga. Nov. 9, 2018).

of timely mail delivery—which depends on numerous factors beyond a voter's control—the outright rejection of all VBM ballots delivered after 7 p.m. on Election Day, regardless of when they were mailed, is unconstitutional and should be enjoined immediately.

## CLAIM FOR RELIEF

### First Amendment and Equal Protection
### U.S. Const. Amend. I and XIV

### 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202
### Undue Burden on the Right to Vote

26. Plaintiffs incorporate by reference and reallege paragraphs l to 27 of this Complaint.

27. Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the justifications put forward by the State for the burdens imposed by the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted).

28. Florida's 7 p.m. Election Day receipt deadline for vote by mail ballots burdens the right to vote of eligible voters, including Plaintiffs' supporters and members, whose ballots were postmarked before Election Day but not received by the supervisor of elections by 7 p.m. on Election Day due to unpredictable mail delivery—through no fault of the voters—because they are disenfranchised entirely. *See, e.g.*, *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1257 (N.D. Fla. 2016) ("[B]ecause Florida's statutory framework would categorically deny the right to vote to those individuals, it is a severe burden that is subject to strict scrutiny.") (citation omitted); *Ga. Coalition for the Peoples' Agenda*, *Inc.*, 214 F. Supp. 3d 1344, 1344-1345 (S.D. Ga. Oct. 14, 2016) (granting preliminary injunction extending the voter registration deadline because of "post office closures and the suspension of mail service during this period" due to a hurricane).

29. The 7 p.m. receipt deadline on Election Day for those whose vote by mail ballots are postmarked before Election Day is not justified by any legitimate state interest, let alone any compelling state interest that is narrowly drawn. *See Diaz v. Cobb*, 475 F. Supp. 2d 1270, 1277 (S.D. Fla. 2007) (concluding that "Defendants have not presented this Court with any justification for the state's legislative judgment that a twenty-nine day cutoff [for voter registration applications], without a grace period, is necessary to achieve the state's legitimate goals."); *See Taylor v. La.*, 419 U.S. 522, 535 (1975) (concluding that

13

"administrative convenience" cannot justify the deprivation of a constitutional right).

30. Thus, the burden that the VBM ballot delivery deadline imposes on the fundamental right to vote outweighs any alleged benefit of the law, and cannot be justified by any legitimate state interest.

31. Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between the Secretary of State and Plaintiffs, who have adverse legal interests, because the 7 p.m. Election Day deadline set forth in Fla. Stat. 101.67(2) subjects Florida voters, including Plaintiffs' members and constituents, to serious, concrete, and irreparable injuries to their fundamental right to vote, including deprivation of the right to vote in the November 6, 2018 election.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

    A. Declaring that all ballots postmarked before November 6, 2018 and received by the supervisor of elections within 10 days after Election Day should be counted in the general election;

    B. Preliminarily and permanently enjoining enforcement of Fla. Stat. §§ 101.6103(5)(c), 101.67(2), and any other source of state law that conditions whether vote by mail ballots will be counted solely on when

       the ballot is received by the supervisor of elections, which is an arbitrary date entirely beyond voters' control;

C.    Requiring the Secretary of State to issue a directive to Florida's supervisors of elections advising them that, in light of the Court's Order, all vote by mail ballots postmarked before Election Day and received by the supervisor of elections within 10 days of Election Day must be counted

D.    Temporarily tolling the recount deadline of 3 p.m. on November 15, 2018 (nine days after the general election) under Fla. Stat. § 102.141(7)(c) until *after* this matter is heard;

E.    Temporarily tolling the recount deadline of 3 p.m. on November 15, 2018, under Fla. Stat. § 102.141(7)(c), to provide each county with sufficient time to count VBM ballots that are postmarked before Election Day and were received by the supervisor of elections within 10 days of Election Day;

F.    Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia,* 42 U.S.C. § 1988 and other applicable laws; and

G.    Granting such other and further relief as the Court deems just and proper.

Dated: November 12, 2018

Respectfully submitted,

 /s/ *Marc Elias*
Marc E. Elias
Email:  MElias@perkinscoie.com
Uzoma N. Nkwonta*
Email:  UNkwonta@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

RONALD G. MEYER
Florida Bar No. 0148248
Email:  rmeyer@meyerbrookslaw.com
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email:  jblohm@meyerbrookslaw.com
Meyer, Brooks, Demma and Blohm, P.A.
131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
(850) 878-5212

*Counsel for Plaintiffs*

\**Pro Hac Vice* Motion forthcoming