**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| VOTEVETS ACTION FUND; DEMOCRATIC NATIONAL COMMITTEE; and DSCC a/k/a DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE,<br><br>   Plaintiffs,<br><br>      v.<br><br>KENNETH W. DETZNER, in his official capacity as the Florida Secretary of State,<br><br>   Defendant. | Case No. 4:18-cv-00524-WS-CAS |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs VoteVets Action Fund, Democratic National Committee ("DNC"), and DSCC (collectively, "Plaintiffs") respectfully submit the following memorandum of law in support of their emergency motion for a temporary restraining order and preliminary injunction.

**INTRODUCTION**

"It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote and to have *their votes counted*." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (emphasis added). Here, that right is at stake, because ballots cast

by eligible voters in Florida that were postmarked sufficiently in advance of Election Day to allow for delivery *before* Election Day will not be counted if, by no fault of the voter and for reasons outside the voter's control, those ballots were delivered after 7 p.m. on Election Day. Fla. Stat. § 101.6103(5)(c) ("A ballot shall be counted only if. . . [i]t is received by the supervisor of elections not later than 7 p.m. on the day of the election.").

Here, Plaintiffs challenge the enforcement of Fla. Stat. § 101.6103(5)(c), which requires election officials to discard mail-in-ballots *received* after 7 p.m. on Election Day, regardless of how far in advance voters mailed their ballots. In fact, this statutory requirement would result in the rejection of vote by mail ("VBM") ballots that were actually received by the post office on or before Election Day, but, for unexplained reasons, were not delivered within the statutory time frame. This practice violates the constitutional rights of Florida voters, including Plaintiffs' supporters and members, who cast vote by mail ballots by conditioning their right to vote entirely on the arbitrary actions of post office. It further imposes an unconstitutional burden on the right to vote of the scores of Florida voters whose vote by mail ballots were rejected due to late deliveries.

Plaintiffs therefore move this Court for a temporary restraining order and preliminary injunction enjoining the enforcement of Fla. Stat. § 101.6103(5)(c) and any other source of state law that requires election officials to reject vote by mail

ballots that are postmarked before Election Day, but were not delivered until after 7 p.m. on Election Day. Plaintiffs further request that the Secretary be required to issue a directive to Florida's Supervisors of Elections and canvassing boards instructing them that all ballots postmarked before Election Day, but delivered up to 10 days after Election Day, must be counted, and that the rejection of such ballots is unconstitutional.

## STATEMENT OF FACTS

Vote by mail ballots are commonly used by Florida voters. "Both the overall number of VBM ballots, as well as the percentage of VBM ballots of all votes cast, have steadily ticked up over the past three presidential elections in the Sunshine State." Daniel A. Smith, *Vote-By-Mail Ballots Cast in Florida* 5, AM. CIV. LIBERTIES UNION FLA. (Sept. 19, 2018), https://www.aclufl.org/sites/default/ files/aclufl_-_vote_by_mail_-_report.pdf. For example, "in the 2016 general election, more than 2.7 million registered voters, some 28.7 percent of the 9.6 million Floridians who turned out to vote, cast their ballot by mail, up from the nearly 2.4 million registrants (or 27.8 percent of the electorate) who voted VBM in 2012." *Id.* Continuing this trend, in the November 6, 2018 general election, nearly 3.5 million Florida voters requested to vote by mail. *Vote-by-Mail Request and Early Voting Reports*, FLA. DIVISION ELECTIONS, https://countyballotfiles.elections.myflorida. com/FVRSCountyBallotReports/AbsenteeEarlyVotingReports/PublicStats (last

visited Nov. 8, 2018). But as of November 8, 2018, at 7:17 a.m., a staggering 874,818 of those VBM ballots had not yet been counted as returned. *Id.*

With the exception of overseas voters, VBM ballots under current Florida law are only counted if they are received by the Supervisor of Elections by 7 p.m. on the day of the election. Fla. Stat. § 101.6103(5)(c) ("A ballot shall be counted only if. . . [i]t is received by the supervisor of elections not later than 7 p.m. on the day of the election."); Fla. Stat. § 101.67(2) ("[A]ll marked absent electors' ballots to be counted must be received by the supervisor by 7 p.m. the day of the election."). Ballots from overseas voters, however, may be counted if they are postmarked by Election Day and received by the Supervisor of Elections within 10 days after the date of the election. Fla. Stat. § 101.6952(5).

Conditioning the validity of ballots solely on a "received by" date, rather than coupling the "received by" date *and* the postmark date—which is the case for overseas voters—all but ensures that qualified voters submitting VBM ballots can be denied the right to vote based entirely on arbitrary factors beyond their control, like mail delivery speed. For example, mail delivery can be delayed due to weather emergencies, human error causing bags of mail to be sent to the wrong transfer facility, traffic delays resulting in behind-schedule mail transfers, and understaffing at postal facilities causing mail to take longer to process and deliver than when fully staffed, among countless other potential scenarios. Illustrating this point, one voter

4

in Miami-Dade County reported that he mailed his ballot on October 29, 2018—over a week before Election Day—yet learned *after* Election Day that his ballot had not been received by the Supervisor of Elections. *See* Jerry Iannelli, *Photos Show Scores of Uncounted Ballots in Opa-locka Mail Center*, (Nov. 9, 2018, 6:44 PM), MIAMI NEW TIMES, https://www.miaminewtimes.com/news/miami-ballots-are-still-inside-opa-locka-post-office-10899192.

Compounding this problem, previous reasonable expectations of mail delivery speeds may no longer be reasonable in light of the United States Postal Service ("USPS") changes, which were not widely publicized. USPS recently elongated its standards for delivery of first-class mail. Previously, first-class postage was to be delivered within one to three days of mailing. But now that timeline has been stretched to two to five days. Melissa Santos, *'New Reality' of Vote-By-Mail Includes Delays and Problems with Postmarks*, NEWS TRIB. (NOV. 1, 2016, 12:18 PM), https://www.thenewstribune.com/news/politics-government/election/article110600307.html.

Extraordinary circumstances can also delay mail delivery and affect the voting process. For example, on October 25, 2018, the Miami-Dade Police and federal agents evacuated a USPS mail sorting and distribution center in Opa-locka due to a bomb scare. Michelle Quesada, *Police Evacuate Mail Facility in Opa-Locka; Officers and Agents Seen In and Out of Building*, WPTV (Oct. 26, 2018, 5:18 AM),

5

https://www.wptv.com/news/state/police-evacuate-mail-facility-in-opa-locka-officers-and-agents-seen-in-and-out-of-building.

To minimize the impact of arbitrary post office delivery timelines on the right to vote, numerous other states that allow absentee voting by mail take into account the date by which the Supervisor of Elections receives the ballot *as well as* the postmark date in determining whether to count the ballot. *See*, *e.g.*, Alaska Stat. § 15.20.081(e) (postmarked by Election day and received 10 days after Election Day); Iowa Code Ann. § 53.17(2), (3) (postmarked one day before Election Day and received 6 days after Election Day); Maryland Code Regs. § 33.11.03.08(B) (postmarked by Election Day and received 10 days after Election Day); New York Elec. Law § 8-412(1) (postmarked 1 day before Election Day and received 7 days after Election Day); North Carolina Gen. Stat. Ann. § 163A-1310(b)(2)(b) (postmarked by Election Day and received by 3 days after Election Day); North Dakota Cent. Code Ann. § 16.1-07-09 (postmarked 1 day before Election Day and received 5 days after Election Day); Texas Elec. Code § 86.007(a)(2) (postmarked by Election Day and received by the day after Election Day), Utah Code § 20A-3-306 (2)(b) (postmarked 1 day before Election Day and received 6 days after Election Day); Washington Rev. Code § 29A.40.091(4) (postmarked by Election Day and received 5 days after Election Day); and West Virginia Code § 3-3-5(g) (postmarked by Election Day and received by 6 days after Election Day; ballots with no postmark

are counted if received by 1 day after Election Day).

Similarly, the U.S. District Court for the Middle District of Georgia recently extended, by three days, the deadline for the return of absentee ballots postmarked by Election Day in response to "a confluence of extraordinary circumstances," including the late delivery of VBM ballots to voters. The Court ordered that the Superintendent of Elections of Dougherty County "shall count and include in the certified election results" all VBM ballots "postmarked by November 6, 2018 [Election Day]" and "received on or before Friday, November 9, 2018, if otherwise proper." *Democratic Party of Georgia v. Burkes*, Case No. 1:18-cv-212 (M.D. Ga. Nov. 9, 2018).

The relief Plaintiffs seek here is a process already contemplated by Florida law and will not require any new administrative processes. Supervisors of elections already accept VBM ballots from overseas voters up to 10 days after Election Day. *See* Fla. Stat. § 101.6952(2) ("[a] vote-by-mail ballot from an overseas voter . . . which is postmarked or dated no later than the date of the election and is received by the supervisor of elections . . . no later than 10 days after the date of the election shall be counted as long as the vote-by-mail ballot is otherwise proper."). Thus, as of the date of this filing, supervisors of elections and canvassing boards are still *receiving* and counting VBM ballots.

7

Other Florida voting laws rely on postmark dates as well. For example, Florida uses the postmark date as the relevant deadline for voter registration applications delivered by mail, if a clear postmark is present on the mailing envelope. *See* Fla. Admin. Code. Ann. r. 1S-2.042(7)(a). Only if a postmark cannot be determined on the face of the voter registration application does the State use the "received by" date. *Id.*

Because Fla. Stat. §§ 101.6103(5)(c) and 101.67(2) condition the eligibility of Florida voters' VBM ballots on the arbitrary and unpredictable event of timely mail delivery—which depends on numerous factors beyond a voter's control—the outright rejection of all VBM ballots delivered after 7 p.m. on Election Day, regardless of when they were mailed, is unconstitutional and should be enjoined immediately.

## ARGUMENT

### A. Temporary restraining order and preliminary injunction standard.

"A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts*, 612 F.3d 1279, 1289-90 (11th Cir. 2010). "To obtain such relief, the moving party must show (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the

public interest." *GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015). Here, Plaintiffs have met each of these factors and are thus entitled to the temporary injunctive relief that they seek.

**B. Plaintiffs are likely to succeed on the merits because the rejection of ballots cast by eligible Florida voters, and post-marked before Election Day, imposes a severe burden on the right to vote.**

The State's rejection of VBM ballots cast by eligible Florida voters who timely mailed their ballots before Election Day results in arbitrary disenfranchisement—for reasons beyond the voter's control—and imposes a severe burden on the right vote, in violation of the First and Fourteenth Amendments.

In *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), the Supreme Court laid out a "flexible standard" to resolve constitutional challenges to state election laws that burden voting rights. *See Anderson*, 460 U.S. at 789. "A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 433-34 (quotation marks and citation omitted). When a regulation subjects the right to vote to a "severe" restriction, the restriction "must be narrowly drawn to advance a state interest of compelling importance." *Norman v.*

*Reed*, 502 U.S. 279, 280 (1992). Less severe burdens remain subject to balancing. But "[h]owever slight" the burden on the right to vote "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality) (quoting *Norman*, 502 U.S. at 288-89).

Courts have held that a denial of the right to vote clearly amounts to a severe burden on the franchise. *See, e.g.*, *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1257 (N.D. Fla. 2016) (holding that "because Florida's statutory [voter registration deadline] framework would categorically deny the right to vote to those individuals [displaced by a hurricane], it is a severe burden that is subject to strict scrutiny") (citing *Burdick*, 504 U.S. 434); *see also Ayers-Schaffner v. DiStefano*, 860 F. Supp. 918, 921 (D.R.I. 1994), *aff'd*, 37 F.3d 726 (1st Cir. 1994) ("A complete denial of the right to vote is a restriction of the severest kind."); *Ne. Ohio Coal. For Homeless v. Husted*, 696 F.3d 580, 585-87 (6th Cir. 2012) ("summary" and "automatic" nature of disqualification of right-place, wrong-precinct ballots suggests burden on right to vote is "substantial"); *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015) ("*LOWV*") ("[T]he basic truth [is] that even one disenfranchised voter—let alone several thousand—is too many[.]").

Specifically, courts have held that where delivery of absentee mail ballots was delayed through circumstances outside of voters' control, those voters' ballots should not be disenfranchised. *See United States v. Florida.*, No. TCA-80-1055, 1982 U.S. Dist. LEXIS 18487, *9 (N.D. Fla. Apr. 2, 1982) (requiring that "any ballot cast for federal offices by a citizen located in a foreign county, which is postmarked no later than November 2, 1982 [which was Election Day] and received by the appropriate election officials no later than 5:00 p.m., November 12, 1982, shall be counted, so long as the ballot would have been counted if it had been received by the close of the polls on election day"); *Democratic Party of Georgia*, Case No. 1:18-cv-212 (M.D. Ga. Nov. 9, 2018) (ordering that the Superintendent of Elections of Dougherty County "shall count and include in the certified election results" all VBM ballots "postmarked by November 6, 2018 [Election Day]" and "received on or before Friday, November 9, 2018, if otherwise proper"); *see also Stamos v. Genesee Cty. Bd. of Canvassers*, 46 Mich. App. 636, 645-46 (1973) ("The sole irregularity in the instant case is the failure of the field supervisor to reach the precincts before 8:00 p.m. for reasons which could not be foreseen. … We do not believe that the miscalculation by the field supervisor should deprive them of their votes."); *Brown v. Grzeskowiak*, 101 N.E.2d 639 654 (Ind. 1951) ("[I]f because of the failure of the county clerk or any other election official to do his duty, such ballot is not delivered to the inspector of the precinct in time for it to be counted by the

11

precinct election board it will be counted by the court in an election contest proceeding," and "[t]o hold otherwise would be to open the door for an unscrupulous clerk to hold absent voter's ballots in his office beyond the time when they could be delivered to the precinct voting places and thereby disfranchise voters and control the results of an election.") (internal citations omitted).

Indeed, courts have recognized the need for relief from voting deadlines due to the slowdown or temporary stoppage of post office mail delivery. *See Ga. Coalition for the Peoples' Agenda*, *Inc.*, 214 F. Supp. 3d 1344, 1344-1345 (S.D. Ga. Oct. 14, 2016) (granting preliminary injunction extending the voter registration deadline because of "post office closures and the suspension of mail service during this period" due to a hurricane); *In re Holmes*, 788 A.2d 291, 295 (N.J. Sup. Ct. 2010) (examining the situation in which a post office shut down temporarily due to an anthrax scare, which resulted in the delivery of absentee ballots past the deadline, and allowing such ballots to count in the relevant election, because "rigid application of the rule that all ballots be received by the board by 8:00 P.M. of Election Day would unfairly deprive absentee voters of their franchise as a result of exceptional circumstances neither within their control nor which, in light of human experience, might reasonably be expected").

Similarly here, imposing a deadline for VBM ballots based solely on the date of delivery to the supervisor of elections, notwithstanding unreliable and

increasingly delayed post-office delivery times, *see* Dkt. 1 ¶¶ 18-20, will result in the total disenfranchisement of eligible Floridians whose ballots were postmarked before Election Day but not received by the Supervisor of Elections by 7 p.m. on Election, which is a "severe" burden on the right to vote. Supervisors of elections and canvassing boards are currently still accepting and counting VBM ballots from overseas voters and will continue to do so for 10 days after Election Day. Fla. Stat. § 101.6952(5). Given that existing practice, the State has no legitimate interest sufficient to justify rejecting and discarding other VBM ballots postmarked before Election Day that arrived after 7 p.m. on Election Day through no fault of the voters. *See Diaz v. Cobb*, 475 F. Supp. 2d 1270, 1277 (S.D. Fla. 2007) (concluding that "Defendants have not presented this Court with any justification for the state's legislative judgment that a twenty-nine-day cutoff [for voter registration applications], without a grace period, is necessary to achieve the state's legitimate goals."); *see also Norman*, 502 U.S. at 288-89. Supervisors of Elections and canvassing boards, which are still tabulating ballots from overseas voters, would see no changes in their administrative processes. At most, they would see an increase in the number of counted ballots cast by eligible voters, which certainly would not justify the arbitrary disenfranchisement of some Florida voters who mailed their ballots in advance of Election Day. *See Taylor v. Louisiana*, 419 U.S. 522, 535

(1975) (concluding that "administrative convenience" cannot justify the deprivation of a constitutional right).

### C. Absent an injunction, Plaintiffs and Florida voters will suffer irreparable harm.

Irreparable harm will ensue to eligible Florida voters, including Plaintiffs' members and constituencies, as well as to Plaintiffs themselves, in the absence of emergency and temporary injunctive relief.

First, absent injunctive relief, some eligible Florida voters, including those of Plaintiffs' supporters and members who mailed their ballots before Election Day but whose ballots were not received by the Supervisor of Elections by 7 p.m. on Election Day, will be disenfranchised in the November 6, 2018 election for reasons—namely post-office delivery delays—entirely unrelated to their qualifications and beyond their control. *See* Section B, *supra*. Courts have long recognized that an abridgment to the voters' constitutional right to vote is "irreparable harm. . . and no further showing of injury need be made." *Touchston v. McDermott*, 234 F.3d 1133, 1158-59 (11th Cir. 2000); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("*OFA*") (abridgement of right to vote constitutes irreparable harm); *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997) (same); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (same).

Second, irreparable harm will ensue to Plaintiffs DNC and DSCC because the unlawful disenfranchisement of eligible voters *See Hunter v. Hamilton Cty. Bd. of*

14

*Elecs.*, 635 F.3d 219, 244 (6th Cir. 2011) (finding irreparable harm to the candidate because "the disputed ballots matter to the outcome of the election," and "[t]he candidate who ultimately loses the election will suffer an irreparable and substantial harm").

### D. The balance of hardships weighs in favor of an injunction.

The balance of hardships in this case weighs in favor of granting the emergency and temporary injunctive relief Plaintiffs seek. As discussed, some of Plaintiffs' supporters and members, as well as other eligible Florida voters, will be irreparably harmed in the absence of such relief by being disenfranchised. *See* Section B, *supra*. Supervisors of elections and canvassing boards, in contrast, would be required to count additional VBM ballots mailed in advance of Election Day—a process that is currently ongoing for overseas voters—and thus would not encounter any significant change to their current obligations. *See Fla. Democratic Party*, 215 F. Supp. 3d at 1258 (holding that "the balance of the hardships favors Plaintiff," as "it would be nonsensical to prioritize [administrative] deadlines over the right to vote"); *see also Taylor*, 419 U.S. at 535 (concluding that "administrative convenience" cannot justify the deprivation of a constitutional right). Thus, the balance of the hardships weighs in favor of granting the relief Plaintiffs seek.

### E. An Injunction Is in The Public Interest.

Finally, the relief that Plaintiffs seek is in the public interest because it will allow eligible Florida voters to exercise their fundamental right to vote. The Eleventh Circuit, along with other courts, has held that the public has a paramount interest in elections in which every eligible resident can cast an effective vote. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *see also LOWV*, 769 F.3d at 248 ("[t]he public has a 'strong interest in exercising the fundamental political right to vote.'" (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)); *OFA*, 697 F.3d at 437 ("The public interest . . . favors permitting as many qualified voters to vote as possible."); *United States v. Classic*, 313 U.S. 299, 315 (1941) (The Constitution guarantees the right of voters "to cast their ballots and have them counted."). Thus, the public interest would be best served by granting the relief that Plaintiffs request.

### CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court issue an emergency temporary restraining order and preliminary injunction requiring Defendant, his officers, employees, and agents, and all persons acting in active concert or participation with Defendant, or under Defendants' supervision, direction, or control, including all supervisors of elections and canvassing boards, to count all

vote by mail ballots from eligible Florida voters that were postmarked prior to Election Day and received within 10 days after Election Day.

Dated: November 12, 2018

                              Respectfully submitted,

                               /s/ *Marc Elias*
                              Marc E. Elias
                              Email:  MElias@perkinscoie.com
                              Uzoma N. Nkwonta*
                              Email:  UNkwonta@perkinscoie.com
                              PERKINS COIE LLP
                              700 Thirteenth Street, N.W., Suite 600
                              Washington, D.C. 20005-3960
                              Telephone: (202) 654-6200
                              Facsimile: (202) 654-6211

                              RONALD G. MEYER
                              Florida Bar No. 0148248
                              Email:  RMeyer@meyerbrookslaw.com
                              JENNIFER S. BLOHM
                              Florida Bar No. 0106290
                              Email:  JBlohm@meyerbrookslaw.com
                              Meyer, Brooks, Demma and Blohm, P.A.
                              131 North Gadsden Street
                              Post Office Box 1547
                              Tallahassee, FL 32302-1547
                              (850) 878-5212

                              *Counsel for Plaintiffs*

                              **Pro Hac Vice* Motion forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2018, I electronically filed the foregoing on behalf of the Plaintiffs with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

Respectfully submitted,

/s/ *Marc E. Elias*

Marc E. Elias

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(F), I HEREBY CERTIFY that the enclosed Memorandum of Law of Plaintiffs contains approximately 3,677 words, which is fewer than the total words permitted by the rules of court. Counsel relies on the word count of the computer program used to prepare this memorandum.

Dated: November 12, 2018

       /s/ *Marc Elias*
Marc E. Elias
Email:  MElias@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211