UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| VOTEVETS, DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE, and DEMOCRATIC NATIONAL COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>KENNETH W. DETZNER, in his official capacity as the Florida Secretary of State,<br><br>Defendants. | No. 4:18-cv-524 (MW-CAS) |

## DECLARATION OF ION SANCHO

I, Ion Sancho, according to 28 U.S.C. §1746, hereby state:

1. My name is Ion Sancho. I am over 18 years of age, am competent to testify, and declare the following facts based on my own personal knowledge.

2. I am the former Supervisor of Elections for Leon County, Florida, and I served in that position for ~~____~~ 28 years. As the Leon County Supervisor of Elections, I was an advocate for measures to protect the right to vote and increase participation among eligible voters.

3. I was responsible for administering county, state, and federal elections; registering voters; providing for absentee and early voting; and upholding and administering state election laws in Leon County. Under my supervision, the voter

turnout in Leon County, which includes the state capital of Tallahassee, consistently ranked among the highest in the state of Florida, with a record setting 86% in the 2008 general election.

4. I received a B.A. from Stetson University and a J.D. from Florida State University Law School. I am nationally certified by the Elections Center as a Certified Elections and Registration Administrator (CERA). As one of the longest serving Supervisors of Elections in Florida, I served on the Board of Directors of the Florida State Association of Supervisors of Elections (FSASE) and provided training on elections best practices for fellow supervisors.

5. I have presented testimony before the United States Congress, the United States Election Assistance Committee, and the United States Civil Rights Commission on topics including auditing federal elections, civil rights restoration, voting systems and software, and the integrity of electronic voting machines. In the 2000 presidential election, I was chosen to lead the hand count of Florida's disputed ballots before the U.S. Supreme Court stopped the hand count.

6. Under Fla. Stat. § 101.6103(2) (the "Statute"), voters are required to send their completed vote-by-mail ballots to their county supervisor of elections so that their completed ballot arrives by no later than 7:00 p.m. on the day of the election (the "7:00 p.m. deadline"), unless the voter satisfies one of the narrow exceptions under Fla. Stat. § 101.6952(3)(b) for overseas voters.

7. As the Leon County Supervisor of Elections, we would always receive ballots in the days after the deadline, most of which would be postmarked before election day, and oftentimes several days before the election.

8. There are certain things that are beyond the control of a supervisor of elections, and which are certainly beyond a voter's control, and the timing of the mail is one them. When it comes to running a vote-by-mail election, a supervisor of elections is only as good as her Post Master.

9. In my position as Supervisor of Elections, I witnessed first-hand how the unpredictability of mail-delivery times resulted in late-delivered ballots. For example, in years where there have been significant weather events that occurred near or around an election—and both the primary and the general election fall within Florida's hurricane season—many vote-by-mail ballots would arrive after the 7:00 p.m. deadline, despite having been postmarked several days before the election.

10. In 2016 when Hurricane Matthew hit in October 2016, the mail was significantly delayed because all of Leon County lost power. When Hurricane Hermine hit during the 2005 primary election, not only was the mail impacted but I recall having to do a recount with generators because we had lost power. In 2004, I recall that four or maybe five hurricanes hit Florida in rapid succession, forcing supervisors of elections to make adjustments to voting procedures in order to protect our voters' access to the franchise.

11. Even during election cycles free of whether related emergencies, I regularly encountered vote-by-mail ballots and cure affidavits that arrived just a moment too late within the days immediately following the respective deadlines, despite being postmarked well in advance.

12. Of course, these issues were not limited to vote-by-mail ballots; postal delays also impacted the timeframe in which we would receive voter registration forms. The difference is that voter registration forms may be processed based on the date on which they are *postmarked*, vesting control with the voter and not the reliability of the mail service where the voter resides.

13. When I first started my career as a supervisor of elections in 1988, there were fewer state laws that seemed design to limit and burden access to the franchise. At that time, we would allow voters who started the process of registering for example, but who mailed an incomplete form, to come in after the registration deadline to complete their registration. I had the discretion to take the position that voters who had begun the process of registering before the deadline had a legal right to the opportunity to perfect their registration. But that practice is no longer permitted.

14. In another example, Leon County was the first to allow and implement early voting beginning in 1994, and we would allow early voting to continue through the day before the election. But then the Legislature arbitrarily regulated that away

too, making it unlawful for supervisors of elections to allow early voting on the Monday before an election, absent emergency circumstances.

15. Knowing that the speed at which mail is processed can affect a voter's ability to cast their ballot on time, Leon County changed the color of the vote-by-mail envelopes to a "hospital gown" green. The reason for this was simple: we wanted to be able to look at a stack of unprocessed mail and to be able to easily find what mail was ours and contained votes.

16. It was our practice when I was the Leon County Supervisor of Elections to take the five-minute ride to the post office at around 6:00 p.m. on election day and go through each bin of unprocessed mail in order to locate and retrieve all vote-by-mail ballots that otherwise would not have made it to our office by the 7:00 p.m. deadline, and bring them back to the office before the deadline, so that they could be legally processed.

17. In sum, the 7:00 p.m. vote-by-mail deadline, and the 5:00 p.m. cure deadline, were deeply frustrating to me personally and professionally, because, as a supervisor of elections, I had an obligation to make voting accessible for the voters in Leon County, and being forced to reject their ballots based on this arbitrary deadline was disheartening.

18. Based on my over 28 years of experience in elections administration, I do not believe that there would be any significant administrative burden imposed on

supervisors of elections if they are required to count all vote-by-mail ballots received within the full ten days following an election but after the vote-by-mail deadline, if this Court were to so order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 12, 2018

_____
Ion Sancho