UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| VOTEVETS ACTION FUND; DEMOCRATIC NATIONAL COMMITTEE OF FLORIDA, and DSCC a/k/a DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE,<br><br>    Plaintiffs,<br><br>v.<br><br>KENNETH DETZNER, in his official capacity as the Florida Secretary of State,<br><br>    Defendant. | Case No. 4:18-cv-00524-MW-CAS |

# SECRETARY'S RESPONSE IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

"Plaintiffs mischaracterize Fla. Stat. § 101.67(2). [Section] 101.67(2) does not deny the right to vote to a class of persons. It merely imposes a deadline by which Plaintiffs must return their absentee ballots to the Supervisors of Election. [Section] 101.67(2) proscribes the mechanics of voting by absentee voters in Florida, therefore, it is subject to a lesser standard of review under *Burdick* [*v. Takushi,* 504 U.S. 428 (1992)] and *Rosario*[*v. Rockefeller,* 410 U.S. 752 (1973)]. Defendants need only show that there are important regulatory interests which justify the limited restrictions imposed by § 101.67(2) on Plaintiffs' First and Fourteenth Amendment rights.

As the United States Supreme Court noted in *Burdick,* a state has a substantial interest in regulating their elections in order to make the elections 'fair and honest' and to ensure that 'some sort of order, rather than chaos, is to accompany the democratic processes.' 504 U.S. at 433, 112 S. Ct. at 2063.

\* \* \*

I find that the State's interests in ensuring a fair and honest election and to count votes within a reasonable time justifies the light imposition on Plaintiffs' right to vote. Like the election laws in *Burdick* and *Rosario,* Florida's 7 p.m. deadline of returning ballots on election day does not disenfranchise a class of voters. Rather, § 101.67(2) merely imposes a time deadline by which Plaintiffs must return their votes to Defendants. Plaintiffs are still able to cast a ballot, however, they must either return their absentee ballots in sufficient time so that the votes are received by the 7 p.m. deadline or they must vote in person." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1376-77 (S.D. Fla. 2004).

# I. Introduction

As indicated in the above quote from *Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004), this case has already been decided. In the midst of the 2004 General Election, the U.S. District Court for the Southern District of Florida resolved the very issue raised in this case when it rejected a constitutional challenge of section 101.067(2), Florida Statutes,[1] and refused to enjoin election officials from rejecting absentee ballots which were post-marked by Election Day but received 10 days thereafter. Yet, in the midst of another election 14 years later, the Plaintiffs in this case bring the very same constitutional claim and they seek the very same relief. They do so without even citing *Friedman*, much less any contrary precedent or countervailing evidence. Indeed, the evidence they offer — mere speculation that the U.S. Postal Service is unreliable — is much less than the evidence submitted in *Friedman*. For the reasons stated in *Friedman*, the Plaintiffs' claim is meritless and, for the reasons discussed below, it is too late. Even assuming Plaintiffs could establish a constitutional deprivation, which they cannot, their request for relief is grossly overbroad. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction must be denied.

---

[1] Plaintiffs also challenge § 101.6103(5)(c), Fla. Stat., which imposes the same ballot receipt deadline as § 101.067(2). *Cf.,* § 101.6103(5)(c), Fla. Stat. ("all marked absent electors' ballots to be counted must be received by the supervisor by 7 p.m. the day of the election.") and § 101.6103(5)(c)("A ballot shall be counted only if …[i]t is received by the supervisor of elections not later than 7 p.m. on the day of the election.). For that reason, when referring to section 101.067(2) in this brief, the Secretary also refers to section 101.6103(5)(c).

## II. Relevant Legal Standards

The relief the Plaintiffs seek "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Keister v. Bell,* 879 F.3d 1282, 1287 (11th Cir. 2018) (collecting citations). The four requisites the Plaintiffs "must clearly establish" are: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the [P]laintiff[s] outweighs the potential harm to the [D]efendant; and (4) that the injunction will not disservice the public interest." *Id.* (citations omitted). The rule governing preliminary injunctions "does not place upon the non-moving party the burden of coming forward and presenting its case against a preliminary injunction." *Ala. v. U.S. Army Corps of Eng'rs,* 424 F.3d 1117, 1136 (11th Cir. 2005) (citations ommitted). It bears emphasizing that "[a] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone,* 138 S. Ct. 1942, 1944 (2018). The requirement "is as true in election law cases as elsewhere." *Id.*

## III. Argument

This Court should deny the Plaintiffs' request for extraordinary relief because the Plaintiffs fail to satisfy any one of the four requisites that they must "clearly establish." *Keister,* 879 F.3d at 1287. The Plaintiffs cannot show a

3

substantial likelihood for success on the merits or irreparable harm. Nor can the Plaintiffs show that the equities and public interest favor them.

### A. *The Plaintiffs cannot clearly establish substantial likelihood of success on the merits.*

#### 1. **Plaintiffs cannot establish an undue burden on the right to vote**

"Our Constitution accords special protection for the fundamental right of voting, … recognizing its essential role in the 'preservati[on] of all rights.'" *Ne. Ohio Coal. v. Husted*, 696 F.3d 580, 592 (6th Cir. 2012) (citations omitted). "At the same time, the Constitution vests states with the authority to prescribe '[t]he Times, Places and Manner of holding Elections for Senators and Representatives.'" (citing U.S. Const. Art. I, § 4, cl. 1). "The right to vote is unquestionably basic to a democracy, but the right to an absentee ballot is not." *Prigmore v. Renfro,* 356 F. Supp. 427, 432 (N.D. Ala. 1972), *aff'd* 410 U.S. 919, 93 S. Ct. 1369, 35 L. Ed. 2d 582 (1973). Voting absentee or by mail is a privilege and a convenience. *Id.*

The *Anderson-Burdick* standard ordinarily governs when parties raise comingled, election-related claims under the First and Fourteenth Amendments. This standard seeks to balance the burdens that election laws impose on the right to vote with the justification for those burdens. *See Anderson v. Celebrezze,* 460 U.S.

4

780, 789 (1983); *Burdick v. Takushi,* 504 U.S. 428, 433 (1992).[2] "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788).

As the court recognized in *Friedman*, 345 F. Supp. 2d at 1376, section 101.067(2) "merely imposes a deadline by which Plaintiffs must return their absentee ballots to the Supervisors of Election." Section 101.067(2) furthers "the State's interests in ensuring a fair and honest election." *Id.* at 1377. It also furthers the State's interests in ensuring that election results are efficiently and quickly reported and in promoting faith and certainty in election results. As this Court confirmed just this morning, "[t]hese are all compelling interests." *Democratic Executive Committee of Fla. v. Detzner,* Case No. 4:18-CV-520-MW/MJF, at 25 (N.D. Fla. Nov. 15, 2018); *see also Timmons v. Twin Cities Area New Party*, 520

---

[2] In considering the level of scrutiny to apply when considering a challenge to an election law, the *Anderson-Burdick* standard states that this Court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick,* 504 U.S. at 434 (quoting *Anderson,* 460 U.S. at 789). "This standard is sufficiently flexible to accommodate the complexities of state election regulations while also protecting the fundamental importance of the right to vote." *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012). When voting rights are subjected to "severe" restrictions, the regulation at issue must be "'narrowly drawn to advance a state interest of compelling importance.'" *Norman v. Reed*, 502 U.S. 279, 289 (1992). The test is accommodating enough to subsume the rational basis test that would ordinarily apply in an Equal Protection context. *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 592 (6th Cir. 2012).

U.S. 351, 364 (1997) (states have a legitimate interest "in protecting the integrity, fairness, and efficiency of their ballots and election process as means for electing public officials").

On the other side of the *Anderson-Burdick* scale, "[l]ike the election laws in *Burdick* and *Rosario,* Florida's 7 p.m. deadline of returning ballots on election day does not disenfranchise a class of voters." *Friedman*, 345 F. Supp. 2d at 1377. "Plaintiffs are still able to cast a ballot, however, they must either return their absentee ballots in sufficient time so that the votes are received by the 7 p.m. deadline or they must vote in person." *Id.* This is the kind of "reasonable, politically neutral regulations" that the federal courts have "repeatedly upheld." *Burdick,* 504 U.S. at 438.

Plaintiffs offer no evidence that establishes their claim. They point to the growing popularity of voting-by-mail [DE 4-1, at 3-4], but the reasonableness of the section 101.067(2) deadline is borne out by the observed increase in voting-by-mail. As confirmed in the declaration of Maria Matthews, Director of Florida's Division of Elections, in the 2016 General Election, over 2.6 million Florida voters chose to vote by mail. [DE 34, ¶5]. If Florida voters are informed that they can wait until Election Day to postmark a vote-by-mail ballot and the deadline for receipt of such ballots is extended to 10 days after Election Day, as Plaintiffs propose, the supervisors of elections would be flooded with additional vote-by-

6

mail ballots to count — perhaps millions — *after* the deadline for submitting unofficial election results and after any necessary recounts are ordered on the basis of those unofficial results.[3] Given the potential number of vote-by-mail ballots, that would render the entire statutory schedule unworkable, raise the likelihood of litigation, and potentially call the entire election process into question.

Plaintiffs' declarations are also unavailing. Declarant Nielsen states: (1) he mailed his ballot on October 29, 2018; (2) he checked its status on Election Day by logging onto the Miami-Dade Elections website; (3) he learned at that time that the ballot had not been marked as received; (4) he "considered going to [his] polling place to cast a provisional ballot in person"; but (5) he did not go to the polling place because he assumed his ballot had been received but not yet marked as such. [DE 27]. While Mr. Nielsen's predicament is unfortunate, it is not disenfranchisement. As Florida's Fourth District Court of Appeal recognized when it rejected an election contest involving absentee ballots received after the section 101.67(2) deadline:

> It is the voter who must get the returned ballot into the supervisor's hands before polls close, not the USPS. The ballot explicitly warns voters of that requirement.[4] The very statutory warning[5] itself makes

---

[3] By noon the fourth day after Election Day, each county canvassing board must submit unofficial returns to the Division of Elections. §102.141(5), Fla. Stat. If the unofficial returns reflect that a candidate was defeated by one-half of a percent or less of the votes cast in that race, then a recount is ordered. *Id.* § 102.141(7).

[4] *See* § 101.65, which provides: "Instructions to absent electors.—The supervisor shall enclose with each vote-by-mail ballot separate printed instructions in substantially the following form:

7

> clear the Legislature understood the vagaries of third party delivery yet made the voter responsible to get the ballot to the polls on time. Just as the voter who votes in person must show up at the polls on time.

In other words, those who chose to vote by mail are treated no differently than those who chose to vote on Election Day.

Although Plaintiffs point out that overseas vote-by-mail ballots can be counted if postmarked by Election Day and received up to ten days letter, there is a clear, rational basis for treating domestic and overseas voter-by-mail ballots differently. This Court provided that rational basis in 1982 when it approved a consent decree establishing the deadline for overseas ballots to resolve claims brought under the Overseas Citizens Voting Rights Act and the Federal Voting Assistance Act concerning the challenges associated with transportation and delivery of absentee ballots sent from overseas. *See, United States v. Florida*, No. TCA-80-1055, 1982 U.S. Dist. LEXIS 18487 (N.D. Fla. Apr. 2, 1982). There, the Court specifically noted that "[t]he mailing time (one way) between the United

---

READ THESE INSTRUCTIONS CAREFULLY
BEFORE MARKING BALLOT.
1. VERY IMPORTANT. In order to ensure that your vote-by-mail ballot will be counted, it should be completed and returned as soon as possible so that it can reach the supervisor of elections of the county in which your precinct is located no later than 7 p.m. on the day of the election."

[5] Here, The court was referring to § 101.6103(2), Fla. Stat., which explicitly states: "The elector shall mail, deliver, or have delivered the marked ballot so that it reaches the supervisor of elections no later than 7 p.m. on the day of the election. The ballot must be returned in the return mailing envelope."

States and persons in foreign countries varies depending upon the country of destination" and can be up to two and a half weeks. *Id.* at *7.

Supervisor Sancho's declaration adds little other than a conclusory assertion that he "do[es] not believe that there would be any significant administrative burden imposed on the supervisors of elections if they are required to count all vote-by-mail ballots received within the full ten days after the vote-by-mail deadline, if this Court were to so order." [DE 31, ¶18]. In contrast to Supervisor Sancho's conclusory declaration, this Court heard live testimony from current Leon County Supervisor of Elections, Mark Earley, who in the midst of the ongoing 2018 election explained in detail why the proposed extension of the vote-by-mail ballot receipt deadline would cause significant administrative burdens. But, in any event, it is Plaintiffs' burden to establish extraordinary circumstances warranting a preliminary injunction; the Secretary has no burden to "com[e] forward and present[] its case against a preliminary injunction." *Ala. v. U.S. Army Corps of Eng'rs,* 424 F.3d at 1.136

In the end, Plaintiffs cite to no cases and submit no evidence that warrant departure from the *Friedman* court's conclusion, when it rejected a constitutional challenge of section 101.067(2), "that the State's interests in ensuring a fair and honest election and to count votes within a reasonable time justifies the light imposition on Plaintiffs' right to vote."

Thus, the Plaintiffs have not established—and cannot establish—likelihood of success on the merits.

### 1. *Plaintiffs have not and cannot state a claim under the Equal Protection Clause*

To state a claim under the Equal Protection Clause of the Fourteenth Amendment the Plaintiffs must allege that (1) they were treated differently from similarly situated persons and (2) the defendant unequally applied the laws for the purpose of discriminating against the Plaintiffs. *Roy v. Bd. of Cty. Comm'rs Walton Cty.*, No. 3:06cv95/MCR/EMT, 2007 U.S. Dist. LEXIS 83501 (N.D. Fla. Nov. 9, 2007) (citing *GJR Invs. v. Cty. of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998)). Although the "Claim for Relief" in Plaintiffs' Complaint refers to the Equal Protection Clause, neither the Complaint nor Emergency Motion allege that the Secretary (or anyone else) has applied the facially neutral statute at issue unequally for the purpose of discriminating against the Plaintiffs. Even in an election-related context, a party raising equal protection claims must still prove discriminatory intent. *See Lee v. Va. Bd. of Elections,* 843 F.3d 592, 601-05 and 607 (4th Cir. 2016) (citing *Village of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252 (1977)). Yet nothing in the papers or declarations filed by Plaintiffs refer to any evidence suggesting discrimination of any kind, much less discriminatory intent. If a rational basis for the distinction between domestic and

10

overseas voter-by-mail ballots is required, as Plaintiffs implicitly (but wrongly) suggest, it was provided by this Court in *United States v. Florida,* No. TCA-80-1055, 1982 U.S. Dist. LEXIS 18487, as discussed above.

Thus, Plaintiffs have not stated and cannot establish and Equal Protection claim.

### *B. The Plaintiffs cannot clearly establish irreparable harm.*

The Plaintiffs' claims about irreparable harm also ring hollow due to their delay in bringing this suit. "A preliminary injunction requires showing 'imminent' irreparable harm." *Wreal LLC v. Amazon.com*, 840 F.3d 1244, 1248-49 (11th Cir. 2016). A "delay in seeking a preliminary injunction of even only a few months—although not necessarily fatal—militates against a finding of irreparable harm." *Id.* at 1248-49; *see also Tutoringzone v. Skoolers Tutoring Ctr., LLC,* 2017 U.S. Dist. LEXIS 219630 (N.D. Fla. Dec. 17, 2017) (citing *Wreal* and denying injunction in part based on seven-month delay in bringing suit). "Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights…" *Wreal*, 840 F.3d at 1248.

Section 101.067(2) has been on the books for 47 years, s*ee* ch. 71-159, Laws of Florida, and it has been 14 years since the statute was upheld in *Friedman*. This lawsuit could have been brought long ago. Yet, instead of resolving grievances before the election, the Plaintiffs waited until a week *after* ballots had been cast to

11

sue. They sued when the Florida Legislature was not in session, effectively preventing that body from remedying any concerns about the relevant statutory provisions. As such, they simply cannot demonstrate irreparable harm.

### C. The Plaintiffs cannot clearly establish that the equities and the public interest favor extraordinary relief.

The equities and public interest decidedly weigh against extraordinary relief. "Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections [or in this case *ongoing* elections] absent a powerful reason for doing so." *Crookston v. Johnson,* 841 F.3d 396, 398 (6th Cir. 2016) (citing *Purcell v. Gonzalez,* 549 U.S. 1, 5–6 (2006)).[6] "Courts have imposed a duty on parties having grievances based on election laws to bring their complaints forward for pre-election adjudication when possible." *Hendon v. North Carolina State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (citing *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)); *see also Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1180 (9th Cir. 1988). On a related note,

---

[6] In *Crookston*, the Sixth Circuit stayed a district court's preliminary injunction, which the plaintiff requested approximately 5 weeks before the 2016 General Election so that he could take a selfie with his ballot. *Id.* at 399. In *Conservative Party of New York State v. New York State Board of Elections,* 2010 U.S. Dist. LEXIS 114155, at *2 (S.D.N.Y. 2010) the district court similarly denied a preliminary injunction where the plaintiffs waited until 6 weeks before an election to file their action. In *Silberberg v. Board of Elections of New York,* 216 F. Supp. 3d 411, 420 (S.D.N.Y. 2016) the district court denied a late-filed action for fear of the disruption. In June of this year, the U.S. Supreme Court held that the balance of equities did not weigh in favor of a request for a preliminary injunction in an election law case where the plaintiffs did not demonstrate reasonable diligence in requesting injunctive relief. *See Benisek*, 138 S. Ct. at 1944.

"[p]reliminary injunctions of legislative enactments—because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits—must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution." *Ne. Fla. Chapter. of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).

The Plaintiffs' request for extraordinary relief is too late. As noted above, the statute in question has been on the books since 1971. If imminence is at all a factor when considering requests for extraordinary relief, then the time for such relief has long since passed. *See Wreal,* 840 F.3d 1244, 1246 (11th Cir. 2016) (affirming denial of preliminary injunction where "the plaintiff pursued its preliminary injunction motion with the urgency of someone out on a meandering evening stroll rather than someone in a race against time").

Delays, confusion, and the potential for errors highlighted in the introduction section further militate against granting any extraordinary relief. As the U.S. Supreme Court noted, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24, (2008). The public consequences weigh against extraordinary relief.

### D. Plaintiffs fails to state a claim for the expansive, statewide relief they seek.

Where, as here, the complaint seeks injunctive relief, the "[i]njunctive relief ... must be narrowly tailored to remedy the specific harm alleged," *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976), because "the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki,* 442 U.S. 682, 702 (1979). Federalism principles make tailoring especially important where relief is sought against a state or local government. *See Rizzo v. Goode*, 423 U.S. 362, 378–79 (1976).

Even assuming Plaintiffs could establish a constitutional deprivation, which they cannot, the relief they seek —extending the vote-by-mail receipt deadline statewide —is not tailored to the extent of the alleged deprivation. The only suggestion of potential postal delay cited in Plaintiff's papers and declarations is limited to a single county— Miami-Dade. Plaintiff's Complaint and Emergency Motion merely refer to newspaper reports of the closure of a USPS mail facility in Miami-Dade County for a single day two weeks before the election on October 25, 2018,[7] and to a single voter in Miami-Dade County who reportedly mailed his ballot four days later on October 29, 2018.[8] And they submitted a declaration from only one voter -- from Miami-Dade County. There is no evidence to suggest that

---

[7] *See* ECF 1 (Complaint), at ¶18; ECF4-1 (Emergency Motion), at 4-5.

[8] *See* ECF 1 (Complaint), at ¶16; ECF4-1 (Emergency Motion), at 4-5.

the Opa Locka incident cause a single vote-by-mail ballot to be delivered after the statutory receipt deadline in the area served by the Opa Locka facility, much less statewide. There is simply no evidence that could conceivably justify statewide relief. *See Fla. Democratic Party v. Detzner*, 2018 U.S. Dist. LEXIS 174528 (N.D. Fla. Oct. 10, 2018) (rejecting statewide extension of voter registration deadline following Hurricane Michael); *c.f., Democratic Party of Georgia v. Burkes*, Case No. 1:18-cv-212 (M.D. Ga. Nov. 9, 2018)(ordering an extension of Georgia's vote-by-mail ballot receipt deadline for a *single* county impacted by "a confluence of extraordinary circumstances" precipitated by Hurricane Michael).

Thus, even assuming Plaintiffs could establish a constitutional deprivation, which they cannot, their request for relief is grossly overbroad.

## IV. Conclusion

Because the Plaintiffs have failed to clear the high thresholds for the extraordinary relief they seek, the Secretary asks that this Court deny the Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES**

The undersigned further certifies that this filing complies with the size, font, and formatting requirements of Local Rule 5.1(C), and that this filing complies with the word limit in Local Rule 7.1(F) because it contains 4,100 words, excluding the case style, signature block, and certificates.

*\*\*\**

Respectfully submitted by:

BRADLEY R. MCVAY (FBN 79034)
  *Interim General Counsel*
  brad.mcvay@dos.myflorida.com
ASHLEY E. DAVIS (FBN 48032)
  *Deputy General Counsel*
  ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building Suite, 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
(850) 245-6536 /   (850) 245-6127 (fax)

*/s/ Mohammad O. Jazil*
MOHAMMAD O. JAZIL (FBN 72556)
 mjazil@hgslaw.com
GARY V. PERKO (FBN 855898)
 gperko@hgslaw.com
MALCOLM N. MEANS  (FBN 0127586)
 mmeans@hgslaw.com
HOPPING GREEN & SAMS, P.A.
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301
(850) 222-7500 / (850) 224-8551 (fax)

Dated:  November 15, 2018          ***Counsel for the Secretary of State***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system to the following on this 15th day of November, 2018.

*/s/ Mohammad O. Jazil*
Attorney