UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO.: 4:18-cv-00524-WS-CAS

VOTEVETS ACTION FUND;
DEMOCRATIC NATIONAL
COMMITTEE; and DSCC a/k/a
DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE,

      Plaintiffs,

vs.

KENNETH W. DETZNER, in his official
Capacity as the Florida Secretary of State,

      Defendant,

_____/

## REPUBLICAN PARTY OF FLORIDA'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION LAW

Intervenor, Republican Party of Florida (RPF), submits this Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (TRO Motion) and Incorporated Memorandum of Law.

## INTRODUCTION

Late votes do not count. This fundamental precept of election law reflects a basic requirement of a functional constitutional representative democracy, and a

1

specific, clear requirement of Florida's voting laws. It is beyond dispute that "voting is of the most fundamental significance under our constitutional structure ... It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Burdick v. Takushi,* 504 U.S. 428, 433 (1992) (citations omitted).

In fact, the Constitution itself provides that states may prescribe the "Times, Places and Manner of holding Elections" and the United States Supreme Court has recognized that states retain the power to regulate their elections. Art. I, § 4, cl. 1 of the U.S. Constitution; *see also Siegel v. Lepore,* 234 F.3d 1163, 1179–80 (11th Cir. 2000).

In return for the convenience and efficiency of being able to vote by mail, Florida voters are explicitly and repeatedly told, in accordance with statutory requirements, that unless they submit their ballots in sufficient time to be received by 7 p.m. on Election Day, the vote will not count. This deadline is precisely the sort of "reasonable, politically neutral regulation" that the Supreme Court has "repeatedly upheld." *Burdick*, 504 U.S. at 438.

Despite this clear admonition, some voters may not mail their ballots in time. In this case, Plaintiffs allege—with little evidence and no quantification— that some ballots cast in the November 6 general election were mailed "timely" (a term Plaintiffs do not define) but not received by the deadline, due to the

theoretical possibility of mail being lost or delayed. Under the guise of protecting voters who did not meet the legislatively established deadline *and* chose not to vote in person, Plaintiffs ask this Court to invalidate a thirty plus-year-old Florida statute which mandates—as do the election laws of 37 states and the District of Columbia—a receipt deadline for absentee/VBM ballots without regard to postmark. Apart from asking this Court to ignore established Florida precedent rejecting the very same argument Plaintiffs now posit, Plaintiffs invite this Court to rewrite established Florida legislation and dilute the legitimate votes of those who followed Florida law to make sure their votes were counted.

The bar to a preliminary injunction is necessarily high, as is the standard for whether a federal court should take the grave step of invalidating longstanding Florida election law in the middle of an election, on the tenuous grounds that some unknown number of voters, who chose to vote by absentee ballot and knew about the deadline, *may* not have had their votes counted because of hypothetical delays in the mail. Voting by absentee ballot is a privilege, not an absolute right, and is thus subject to reasonable regulation including bright line deadlines. *Burdick*, 504 U.S. at 438 ("reasonable regulation of elections … *does* require [voters] to act in a timely fashion if they wish to express their views in the voting booth").

Standard campaign strategy should not include recount litigation, especially where it seeks to overturn longstanding, widespread election laws and principles in the middle of tabulating votes. The Motion should be denied.

**SUMMARY OF ARGUMENT**

At stake in this litigation is not only the legitimacy of Florida's election deadline (which has stood the test of time and was faithfully followed by millions of Florida voters), but also the public's confidence in the election process. Allowing a politically-motivated, 11th hour challenge to delay or undo a lawfully-conducted election effectively disenfranchises the millions of voters who did follow the law, to theoretically benefit a relatively small group of voters who undeniably did not follow Florida's election laws. Simply put, voters who DID follow the law should not have their votes negated by voters who DID NOT follow the law. This Court should deny Plaintiffs' Motion.

*First*, this claim has been brought too late, under the doctrine of laches. The delay in filing suit appears calculated to create an "emergency" justifying a preliminary injunction. Granting the requested TRO under the emergent circumstances created by plaintiff's delay would be an unconstitutional deprivation of the due process rights of Defendant and Intervenors, not to mention an affront to the millions of Florida voters who timely complied with the requirements of Florida's voting laws.

*Second,* Plaintiffs lack standing, which "is a threshold matter required for a claim to be considered by the federal courts." *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006). There is no evidence that any of the Plaintiffs was actually injured by failing to comply with the vote-by-mail deadline, and moreover, any such injury was their own doing.

*Third*, the Plaintiffs' TRO motion does not (and cannot) meet any of the requirements for the "extraordinary and drastic" measure of entering a temporary restraining order.

## I. Laches - Plaintiffs Waited Too Long To Sue

The doctrine of laches applies to bar a lawsuit where: (1) there was a delay in asserting a right or a claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted. *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997), citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir.1986); *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005). All three prongs are met here. Consideration of Plaintiffs' claims (and possible judicial action) under the emergent circumstances created by plaintiff's delay would itself be an unconstitutional deprivation of the due process rights of Defendant and Intervenors, not to mention an affront to the millions of Florida voters who did comply with the requirements of Florida's voting laws.

## A.    Obvious Delay

Plaintiffs delayed in asserting their constitutional claims under the statutes they seek to enjoin.   Section 101.6103, Fla. Stat. became effective on effect January 1, 1988.  *See Mail Ballot Election Act*, 1987 Fla. Sess. Law Serv. 87-364 (West). Thus, for decades Florida law has allowed qualified voters to request an absentee ballot from the Supervisor of Elections.  *See* Fla. Stat. § 101.62. When the voter elects to cast a vote by mail, "the elector shall mail, deliver, or have delivered the marked ballot so that it reaches the supervisor of elections no later than 7 p.m. on the day of the election.   The ballot must be returned in the return mailing envelope." *See* Fla. Stat. § 101.6103. The ballot will be counted if "[i]t is received by the supervisor of elections not later than 7 p.m. on the day of the election."  *Id.* This deadline has never changed for the voters complained of by Plaintiffs and could have been challenged at any time.

Moreover, a Florida appellate court has already considered the exact arguments advanced by Plaintiff here.  Florida's Fourth District Court of Appeals held in *Goldsmith v. McDonald*, 32 So. 3d 713, 715 (Fla. 4th DCA 2010) that:

> [T]he statute for absentee voting explicitly places the burden on *the voter* (not the USPS) to deliver the ballot no later than 7:00 p.m. on Election Day. The voter is given the choice of personally conveying the ballot or relying on others (such as the USPS) to do so. The statutes omit any implication that ballots would or should be deemed received by the supervisor simply because before Election Day they were somewhere in the hands of the USPS.

*Id.* at 715 (italics in original). This case has been on the books for 8 years. But none of the three plaintiff organizations here participated in that case, sought to pursue their relief at that time, or otherwise acted to protect the rights they now seek to protect on an emergency basis.

## B.    Delay Not Excusable

For all of these same reasons, Plaintiffs' delay was not excusable. As explained by the court in *Perry v. Judd*, 471 Fed. Appx. 219, 220–21 (4th Cir. 2012) when denying a request for an injunctive relief to place a candidate's name on the ballot or to refrain from printing or mailing ballots until the conclusion of the legal proceedings, the court relied on the doctrine of laches because:

> Movant had every opportunity to challenge the various Virginia ballot requirements at a time when the challenge would not have created the disruption that this last-minute lawsuit has. Movant's request contravenes repeated Supreme Court admonitions that federal judicial bodies not upend the orderly progression of state electoral processes at the eleventh hour. **Movant knew long before now the requirements of Virginia's election laws**. There was no failure of notice. The **requirements have been on the books for years**. If we were to grant the requested relief, we would encourage candidates for President who knew the requirements and failed to satisfy them to seek at a tardy and belated hour to change the rules of the game. This would not be fair to the states or to other candidates who did comply with the prescribed processes in a timely manner and it would throw the presidential nominating process into added turmoil.

*Perry v. Judd*, 471 Fed. Appx. 219, 220–21 (4th Cir. 2012) (emphasis added). *See Sanders v. Dooly County*, GA, 245 F.3d 1289, 1290 (11th Cir. 2001) (no abuse of

discretion in denying injunction on laches grounds because the plaintiffs waited six years after the first use of the plan to file suit which was an inexcusable delay causing prejudice); *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (laches barred plaintiff's' claim which had been in the public record for over 11 weeks before suit was filed as the election approached).

Moreover, "interference with impending elections is extraordinary, and interference with an election after voting has begun is unprecedented." *Sw. Voter Registration Educ. Proj. v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (internal citation omitted). The VBM receipt deadline has been on the books for decades unaltered – yet Plaintiffs waited until after this election occurred to bring their grievance. Allowing this to occur would incentivize people to sit on a potential claim, and then only act on it if there side lost the election: "As a matter of well-established precedent, this delay forecloses a preliminary injunction. **"[T]he law imposes the duty" to bring election grievances forward "for pre-election adjudication**." *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973) (emphasis added). **A contrary rule would "permit, if not encourage, parties who could raise a claim to lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action**." *Id*. (citations and internal quotations omitted, emphasis added); *see also Soules v. Kauaians for Nukolii Campaign Comm*., 849 F.2d 1176, 1180 (9th Cir.

1988) (collecting cases to show that courts do not generally forgive delays in the election context "lest the granting of post-election relief encourage sandbagging on the part of wily plaintiffs"). It seems that is exactly what happened here.

Finally, the timing of the "emergency" injunction is also suspect because although the election was on November 6, 2018 and nothing prevented Plaintiffs from filing their lawsuit on November 10, 2018 (the deadline for certification of the first unofficial results at the polls), Plaintiffs waited until November 12, 2018 to file their lawsuit and injunction. While Plaintiffs have made zero attempts to explain the delay in filing this suit, based on comments during the status conference, they may assert that their lawsuit was prompted by the Opa Locka post office ballots (on November 9, 2018), their own research belies this statement. The record shows that they were aware of their claim, and were drafting their memorandum in support of their emergency injunction, prior to that time. *See* ECF No. 4-1 at p. 4 (stating website "last visited Nov. 8, 2018"). This Court should not permit plaintiffs to benefit from their own failure to timely file by granting the emergency relief sought here.

### C. Prejudice is Manifest

The prejudice to Defendant, Intervenors, and voters who timely complied with Florida's election laws is manifest. "[B]allots and elections do not magically materialize. They require planning, preparation, and studious attention to detail if

the fairness and integrity of the electoral process is to be observed." *Perry*, 471 Fed. Appx. at 226. Both the timing of Plaintiffs' claims and the requested relief prejudices Defendant and Intervenors as they are tasked with responding at the eleventh hour. "Judging the constitutionality of a duly-enacted statute is one of the gravest and most delicate duties the federal courts are called on to perform." *See, e.g.*, *Northwest Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193, 204 (2009)(citations and internal quotations omitted). Yet Plaintiffs' tactical decision to file now has left very little time for any other parties involved to litigate this important issue.

Plaintiffs cannot be permitted to benefit from their wholesale lack of reasonable diligence – their lack of planning does not make this an emergency. *Benisek v. Lamone*, 138 S. Ct. 1942 (2018) As stated in the declaration of the Chairman of the Republican Party of Florida (ECF No. 31), the Party participated in the 2018 election, as it does in all elections, based on existing election laws and regulations. This year, a key facet of the Party's strategy was to notify and urge voters to walk-in their vote-by-mail ballots to their designated poling to avoid having their ballot received after the 7 p.m. deadline. *See* ECF No. 31. To allow this case to proceed at this late juncture would prejudice those Republican voters who acted in accordance with the campaign, rather than the new law that would exist if this Court were to rewrite Florida's election laws. *Id.*

Finally, there are voters who did not mail in their ballot because they thought the ballot would arrive too late. *Id.* Those voters will be prejudiced and deprived of participating in the election if the Court grants Plaintiffs' requested relief, by changing the rules after the deadline has passed and the election has nearly concluded.

## II.    Standing

Plaintiffs have not demonstrated standing to challenge the exclusion of late-arriving vote by mail ballots. At the heart of Article III standing is the existence of an injury. *Via Mat Int'l S. Am. Ltd. v. United States*, (11th Cir. 2006). To establish injury in fact, "a plaintiff must show that he or she suffered "an invasion of a legally protected interest that is concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 (2016). Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating injury. *Id*. at 1547.

Plaintiffs here have failed to allege facts sufficient to show that they have suffered an injury-in-fact in all the situations for which they request relief.  This Court has previously held that "Plaintiffs need not identify *specific* voters that are registered as Democrats that will have their vote-by-mail ballot rejected due to apparent mismatched signatures; it is sufficient that some inevitably will." *Florida Democratic Party v. Detzner*, 4:16-cv-607-MW/CAS, 2016 WL 6090943, at *4

(N.D. Fla. Oct. 16, 2016). But in that case, no ballots had yet been cast, whereas here all votes have already been submitted. In these circumstances, Plaintiffs should be expected to show actual, not presumed, injury since the relevant events have occurred.

Plaintiffs attempt to rely on the declaration of journalist Kirk Nielsen, who claims his VBM ballot was not counted because it was received not received by the Election Day deadline, but absent are any allegations that Mr. Nielsen is a member of one of the organizational Plaintiffs or aligned with the Democratic Party. *See* ECF No. 27. Moreover, Mr. Neilsen is not a party to this case. In addition, Mr. Nielsen was aware on Election Day that his VBM ballot had not been received, but he elected not to vote in person to ensure his vote was counted. *Id.* His calculated inaction cannot support a finding that the named Plaintiffs here have standing. Finally, Mr. Nielsen does not state that his ballot was received by the Supervisor of Elections within the 10 day deadline such that it would be counted if the Court were to accept Plaintiffs' invitation to rewrite Florida's election laws in this case.

At this juncture, Plaintiffs have failed to prove injury-in-fact, likely because they cannot. While some people did not have their ballot received by the deadline and thus not counted, there is no evidence that these ballots would impact the outcome of the election. On this record, we simply don't know the status of the VBM ballots of Plaintiffs' members. Plaintiffs have thus failed to demonstrate the

particularized, actual injury in fact as is mandatory to establish standing. This basis alone is sufficient for the Court to deny the Motion for a Temporary Injunction and dismiss this Complaint.

### III.   None of the Preliminary Injunction Factors Are Met Here

"A district court may grant a preliminary injunction ***only*** upon the movant's showing that (1) it has a substantial likelihood of success on the merits, (2) the movant will suffer irreparable injury unless the injunction is issued, (3) the threatened injury to the movant outweighs the possible injury that the injunction may cause the opposing party, and (4) if issued, the injunction would not disserve the public interest. *See Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1326 (11th Cir. 2001)(emphasis added).

"It is well established in this circuit that [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion' as to all four elements." *Id.*(emphasis supplied, citations and internal quotations omitted). The requesting party's failure to demonstrate a substantial likelihood of success on the merits may defeat the party's claim, regardless of its ability to establish any of the other elements. *Siegel v. Lepore*, 234 F.3d 1163, 1179–80 (11th Cir.2000).

Similarly, the absence of "irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.*

**A. Plaintiffs lack a substantial likelihood of success on the merits.**

In *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1373 (S.D. Fla. 2004), the district court rejected virtually identical claims that Florida law deprived voters of their First, Fourteenth, and Equal Protection rights because absentee ballots would not be counted unless received by the 7 p.m. deadline. The Court found that the plaintiffs failed establish a substantial likelihood of success on their equal protection claim and claims based upon the First and Fourteenth Amendments. The Court held, "that § 101.67(2) does not amount to a violation of Plaintiffs' First and Fourteenth Amendment rights, therefore, Plaintiffs have failed to demonstrate a substantial likelihood of success under this claim."

Six years later, Florida's Fourth District Court of Appeal expressly rejected the contention—indistinguishable from the one Plaintiffs here advance—that any ballot placed "in the U.S. Mail sometime before election day" should be counted even if the ballot did not reach the supervisor of elections by 7 pm on Election Day. *Goldsmith v. McDonald*, 32 So. 3d 713, 715 (Fla 4th DCA 2010). The *Goldsmith* court held that:

> [T]he statute for absentee voting explicitly places the burden on *the voter* (not the USPS) to deliver the ballot no later than 7:00 p.m. on election day. The voter is given the choice of personally conveying the ballot or relying on others (such as the USPS) to do so. The statutes omit any implication that ballots would or should be deemed received by the supervisor simply because before election day they were somewhere in the hands of the USPS.

*Id.* at 715 (italics in original). This holding disposes of Plaintiffs' contentions as a matter of law and wholly negates any likelihood of success on the merits of Plaintiff's claim.

Plaintiffs' argument here is indistinguishable from that advanced in *Goldsmith*: in both cases, the disgruntled candidate argued that ballots allegedly placed in the mail sometime before Election Day should be counted even if they were not received by the statutorily-mandated deadline. Plaintiffs' contention should be rejected on the authority of *Goldsmith*'s holding:

> **The statute's condition for counting the ballot is plain and unqualified: it must reach the supervisor *before* the voting period lapses. It is not a condition capable of being met closely afterwards**. **If it arrives before closing, it may be counted; if it doesn't, it will not be counted**. The statutes and the obligation they impose on the absentee voter could not be more obviously beyond such cavil. **Late but close is not compliance of any kind.**

*Id.* at 715–16 (italics in original; bold emphasis added; internal punctuation and footnote omitted). The court specifically noted the obvious (and impossible to answer) question of "[h]ow close would be enough to be substantial?" *Id*. at 716, n.6.

Although it is beyond dispute that "voting is of the most fundamental significance under our constitutional structure ... [i]t does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Burdick,* 504 U.S. at 433. In fact, the Constitution

itself provides that states may prescribe the "Times, Places and Manner of holding Elections" and the United States Supreme Court has recognized that states retain the power to regulate their elections. U.S. Const. Art. 1, § 4; *United States v. Classic*, 313 U.S. 299 (1941).

Consistent with Supreme Court precedent, Florida courts have also recognized that the ability to cast an absentee ballot is a privilege created by the Florida legislature and not a right. *In re The Matter of the Protest of Election Returns and Absentee Ballots in the November 4, 1997 Election for the City of Miami*, 707 So.2d 1170, 1173 (Fla. 3d DCA 1998) ("in fact, the Florida Legislature created this privilege by enacting statutory provisions separate from the applicable voting at the polls"); *Anderson v. Canvassing and Election Board of Gadsen County, Florida*, 399 So. 2d 1021 (Fla. 1st DCA 1981) ("The Florida legislature created this privilege by enacting statutory provisions separate from those applicable to voting as the polls").

Similarly, courts in other jurisdictions presented with issues on absentee balloting have confirmed that absentee balloting is subject to reasonable regulation and by its very nature "is a privilege and not a right." *Portmann v. Bd. of Elections of Stark Cty.*, 19 N.E.2d 531, 534 (1938) ("The casting of an absentee ballot is a privilege and not an absolute right. It is a privilege accorded individuals who, because of their own business, or their own pleasure, see fit not to be within the

jurisdiction, or within the municipality, on election day. They must take the situation as they find it. If they have absented themselves from the voting place at the time the issue is presented properly, they have so absented themselves at their own risk."); *In Matter Mallon*, 556 A.2d 1271, 1278 (N.J. Super. A.D. 1989) ("voting by absentee ballot is not an absolute right, but is considered a privilege which is subject to proper legislative limitation"). While the right to vote is fundamental, there is no corresponding fundamental right to vote by absentee ballot. *Griffin v. Roupas*, 2003 WL 22232839, *4 (N.D. III. Sept. 2, 2003), aff'd, 385 F.3d 1128 (7th Cir. 2004) (citing *McDonald,* 394 U.S. at 877).

The case of *Roe v. Alabama*, 43 F.3d 574 (11th Cir. 1995) illustrates the grave constitutional problems that would arise if this Court grants the relief Plaintiffs are seeking in this case. In *Roe*, after an election, a state court ordered Alabama to count absentee ballots that failed to comply with the statutory requirement that it be either notarized or signed by two witnesses. Other voters and two candidates filed a complaint in federal court, contending that this was unconstitutional. The court said:

> "This departure would have two effects that implicate fundamental fairness and the propriety of the two elections at issue. First, counting ballots that were not previously counted would dilute the votes of those voters who met the requirements of section 17-10-7 as well as those voters who actually went to the polls on Election Day. Second, the change in the rules after the election would have the effect of disenfranchising those who would have voted but for the

inconvenience imposed by the notarization/witness requirement." *Id.*
at 581.

"We believe that, had the candidates and citizens of Alabama known that something less than the signature of two witnesses or a notary attesting to the signature of absentee voters would suffice, campaign strategies would have taken this into account and supporters of Hooper and Martin who did not vote would have voted absentee." *Id.*
at 582.

The same negative implications would undoubtedly ensue here, as well. The Plaintiffs' failure to demonstrate a substantial likelihood of success on the merits is further exemplified by the utter lack of authority supporting their position under the facts and circumstances of this case. The TRO cases that Plaintiffs cite are readily distinguishable and involve factors that are not present here, such as the effects of a natural disaster[1]; miscalculation, mistake, or fraud by an official[2]; or a public emergency or anthrax scare [3] in a post office.

Other than generally alluding to the possibility of delays associated with a bomb scare at one post office (affecting a few hundred votes at most), Plaintiffs do not allege any such kind of emergency situation or unique circumstances that impacted this election. Their entire case rests the generally-accepted truth that post office mail is sometimes delayed, a fact that is not controversial and was

---

[1] *See Democratic Party of Georgia v. Burkes*, Case No. 1:18-cv-212 (M.D. Ga. Nov. 9, 2018); *Florida Democratic Party v. Scott*, 215 F.Supp.3d 1250 (2016); *Georgia Coalition for the Peoples' Agenda, Inc. v. Deal*, 214 F.Supp.3d 1344 (2016),

[2] *See Stamos v. Genesee Cty. Bd. of Canvassers*, 46 Mich. App. 636, 645-46 (1973); *Brown v. Grzeskowiak*, 101 N.E.2d 639, 654 (Ind. 1951); *United States v. Classic*, 313 U.S. 299, 315 (1941)

[3] *In re Holmes*, 788 A.2d 291, 295 (N.J. Sup. Ct. 2010)

known well before this election (indeed, this was known at the time the legislation was enacted).

Finally, the "facts" on which Plaintiffs rely amount to nothing more than rhetoric masquerading as facts. For example, in Paragraph 13 of their Complaint, Plaintiffs called the number of VBM ballots not received by the end of the Election Day deadline, "staggering." But this number is relatively standard in comparison with the numbers in the last few elections. In 2014, 73% of the requested ballots were turned in, in 2016, 81% of the requested ballots voted, and in 2018 as of November 13th, 75% of the requested ballots for VBM were in on time. Even the numbers alone, without looking at the percentages, do not provide a "staggering" result. In 2014, 692,772 of 2,570,592 and in 2016, 615,885 of 3,347960 vote by mail ballots were not received before the deadline. The number of non-voted VBM ballots this year is consistent with recent historical experience. This number, like occasional delays/lost mail, flat tires, sick kids, bad traffic, demanding bosses, family emergencies, and personal illness presenting challenges to voters, is simply not extraordinary.

Likewise, the reference to Florida laws that rely on postmark dates (Fla. Admin. Code. Ann. r. 1S-2.042(7)(a)) is misleading. This rule does not refer to voter registration applications by individual voters, but instead refers to an organization's application to be a registered third party voter registration

organization. When it comes to an individual voter's registration, the deadline is explained on the Florida Voter Registration Application, stating:

> Deadline to Register: The deadline to register to vote is 29 days before any election. You can update your registration record at any time, but for a Primary Election, party changes must be completed 29 days before that election. You will be contacted if your new application is incomplete, denied or a duplicate of an existing registration. Your Voter Information Card will be mailed to you once you are registered.

In Paragraph 15 of the Complaint they anecdotally claim that mail delivery can be delayed due to a number of hypothetical factors, but do not provide any facts as to how often mail is actually late or lost in general or in this election.

The Plaintiffs' "supporting facts" are most notable for what they omit. Plaintiffs point out that a few states use postmark dates as part of determining whether a vote is late. *See* ECF No 1 (Complaint). But all of these states also have final deadlines based upon the date the supervisor of elections receives the voted ballot, regardless of what date the ballot was mailed. More importantly, Plaintiffs ignore that 37 states and Washington, DC, all have a VBM deadline of Election Day, or earlier, *without regard to postmark*. ***See attached Exhibit "A" Statutory deadlines for receipt of VBM***. Plaintiff is effectively asking this Court, on an expedited basis in the middle of an election, to overturn the longstanding law of the State of Florida, 37 other states, and Washington, DC.

The requirements that votes by mail must be received by the deadline were plainly disclosed on the Supervisor of Election website of each of Florida's 67 counties. This requirement was again disclosed on the face of the ballots themselves. These requirements were also contained in the instructions for how to vote by mail in each of the 67 counties in Florida. Aside from properly completing the ballot and signing it, meeting this deadline was the ONLY requirement imposed. Despite the unsupported allegations that there is some scandal here, over 8 million Florida VBM voters had no trouble getting their votes in on time.[4]

As a final point, Plaintiffs contend there is no legitimate reason why VBM ballots must be received by 7 p.m. on Election Day but overseas ballots can be counted so long as they are received within 10 days after Election Day. From this, they argue that VBM ballots should also enjoy an extended 10-day deadline for receipt after Election Day. This argument fails. The fact that the federal government has required Florida and other states to count military and overseas ballots under the longer timeframe set forth in the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") cannot factor into the analysis in any respect. UOCAVA marks an extraordinary exercise of Congress's power under Article I and the Fourteenth and Fifteenth Amendments to override state law in an effort to serve the compelling interests of U.S. citizens serving in the military or

---

[4] https://www.realclearpolitics.com/elections/live_results/2018/state/fl/governor/

living overseas. Congress has not mandated a similar exception for other citizens, and indeed could not possibly do so. Thus, Plaintiffs comparison to UOCAVA is completely inapposite, and the Court should see through this attempt to conflate the circumstances of active duty military members with stateside veterans or voters who did not follow the rules.

Plaintiffs' claim also fails because it violates several longstanding Canons of Construction, including:

• The Supremacy of Text Principle – "The Words of the governing statute are of paramount concern, and what they convey, in their context, is what the text means." SCALIA, A., & GARNER, B. A. (2012). Reading Law: the Interpretation of Legal Texts, pg. 56. The statute in question could not be more clear; it needs no interpretation, it means what it says. All absentee ballots for stateside voters must be returned by 7pm on election day.

• The Presumption of Validity – " An interpretation that validates, outweighs one that invalidates" Id. at 66. Here, plaintiffs are seeking to invalidate a clear statutory rule, by a strained interpretation that essentially nullifies a deadline.

• The Whole Text Canon – "The text must be construed as a whole." Plaintiffs take single part of Florida's absentee ballot out of context, rather than consider the entire statutory scheme.

To be clear, Plaintiffs' challenge to the statutory deadline is not that it unconstitutional as applied to particular individuals--or in some particular county where weather or natural disaster made compliance with the deadline impracticable. Plaintiffs are arguing that the deadline is facially unconstitutional, across the board. That makes their burden extremely steep, particularly in a case where they are seeking a preliminary injunction. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987)." A facial challenge asserts that a law *always* operates unconstitutionally; therefore, a facial challenge will succeed only if the statute could *never* be applied in a constitutional manner." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (internal quotation marks omitted and emphasis added). Given that millions of Florida voters have complied with the statutory deadline with no reported problem—and have done so for years—it is difficult to see how Plaintiffs can possibly claim that they can show this law to be facially unconstitutional.

In light of the foregoing, Plaintiffs' TRO Motion must fail, utterly lacking any substantial likelihood of success.

### B.    No Irreparable Harm

A voter cannot fail to timely act and thereby create her own emergency, justifying a finding of irreparable harm. The voters that Plaintiffs purport to represent were not barred from voting, nor were they prevented from casting their ballots in any manner they chose. By choosing to vote by mail, they willingly subjected their ballot to the "vagaries of US mail delivery." *See* ECF Nos. 1, 4.

No voter can credibly contend that they will almost certainly be harmed, because there is no proof as to the late votes themselves and whether these late votes were cast for the winning or losing sides. Nor is there proof that counting these late votes will change the outcome of the election– this is wholly speculative and theoretical at this juncture. This is exactly the kind of speculative harm that cannot support the extraordinary relief of a temporary restraining order, as there is no proof in this record that harm will occur, or is even likely to occur. On this basis alone the injunction should be denied. *See Friedman,* 345 F. Supp. 2d at 1368 at n.10; *see also Siegel,* 234 F.3d at 1177 ("Plaintiffs have not shown that they face an irreparable injury which is actual and imminent.").

Plaintiffs appear to be arguing that late votes will not be counted, and that somehow this fact by itself constitutes irreparable harm. But as in *Friedman*, the "immediate" need to have these votes counted rests on Plaintiffs' desire to have the Court declare that Florida's election laws intruded upon their right to vote. This is not an "imminent" irreparable injury, and as a result, a preliminary injunction is

not an appropriate remedy. *Friedman*, 345 F. Supp. 2d at 1368 at n.10 (S.D. Fla. 2004) ("Any determination that § 101.67(2) is unconstitutional in its application to Plaintiffs can be made at a later time").

**C.     The Prejudice to Defendant and Intervenors Greatly Outweighs the Speculative Injury to Plaintiffs**

Here, Plaintiffs fail to allege that any of their members' VBM ballots were arbitrarily rejected or not counted because they were received after the 7 p.m. deadline.  Because Plaintiffs have not alleged an irreparable harm, they also cannot demonstrate that the resulting harm would outweigh the potential prejudice to Defendant Secretary of State in having to re-count and tabulate the VBM ballots for all 67 counties in the state of Florida within a few days. Or, the much broader prejudice that would be worked against Republican candidates who prepared their campaign strategies around the VBM deadline of 7 p.m. and spent considerable resources in implementing that strategy.[5] *Friedman,* 345 F. Supp. 2d at 1368 ("Plaintiffs have also failed to establish that they face a threatened injury which outweighs any harm to Defendants").

Moreover, every late vote that is counted will negate an opposing vote that was timely cast.  It is not fair to negate the votes of Floridians who timely

---

[5] The RPOF took great effort and expense to conform their activities to the longstanding deadline rule. They contacted voters individually, and through advertisements, who had not yet returned their ballots to: remind them to turn in, their ballot, offer to pick them up or otherwise provide transportation if needed, and eventually told voters that they needed to vote in person if they wanted their vote to be received by the deadline and counted. *See* ECF No. 31.

complied with the voting laws, to accommodate the votes of people who violated those same laws. This fact cannot be denied, and at best constitutes even interests on both sides, which does not meet the requirement that the prejudice to plaintiffs be greater than the prejudice to Defendant, the Intervenors, and the voting public. Furthermore, voters who did not vote and decided not to mail in their VBM ballots because they thought the deadline was too close would be deprived of their rights under the new law, if the court were to rewrite the Florida voting statutes.

Finally, the Republican Party of Florida (RPOF) built its campaign strategy around the rules contained in Florida voting laws. To change those laws in the course of the election would significantly undermine the RPOF campaign strategy, and the rights of all Floridians that the RPOF represents. *See* ECF No. 31.

### D.     A preliminary injunction would not serve the public interest.

Plaintiffs must finally prove that a preliminary injunction would not be adverse to the public interest. The State and the public have a compelling (and certainly legitimate) interest in the finality of elections, the orderly and prompt transition of power, ensuring public confidence in the fairness of the voting process, and the prevention of fraud. Plaintiffs' proposed injunction would substantially undermine each of these vital public interests. Extending deadlines and changing rules in the middle of an election is manifestly unfair to all who

followed those rules. *Friedman*, 345 F. Supp. 2d at 1368 n.10 (not in public interest to treat different groups under different sets of rules).

In this context, where Plaintiffs are essentially arguing that Florida should have used a process that relies on postmarks, the issue of fraud deserves special consideration. This is especially important given Florida's unfortunate history of pervasive voter fraud --- "absentee voting is to voting in person as a take-home exam is to a proctored one." *Griffin*, 385 F.3d at 1131. Florida has had "a rich history of absentee-ballot fraud, including at least two elections in which courts invalidated every single absentee ballot because of widespread fraud." *Fla. State Conference of NAACP v. Browning,* 569 F. Supp. 2d. 1237, 1251; see *Bolden v. Potter*, 452 So.2d 564 (Fla. 1984).

The proposed remedy (using postmark dates) does not make the process any fairer, and would require evaluation of every postmark to determine whether it is fraudulent. In this regard, it is notable that postmarks are far more susceptible to fraud and forgery than the "bright line" test of actual arrival time at the supervisor of elections office.

### Request for Stay

In an abundance of caution, should this Court be inclined to grant Plaintiffs' requested injunction, RPOF requests an immediate stay be entered so that RPOF can pursue an immediate appeal to the 11th Circuit Court of Appeals. Rule 62(c) of

the Federal Rules of Civil Procedure provides, in relevant part, "[w]hile an appeal is pending from an interlocutory order or final judgment that grants or dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c) (2018). Additionally, Rule 8(a) of the Federal Rules of Appellate Procedure states that this Court may enter an order staying further proceedings in this case. Specifically, Rule 8(a)(1)(C) provides, in relevant part: "[a] Party must ordinarily move first in the district court for the following relief…an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1)(c) (2018).

There are four factors which are relevant in deciding whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 426, (2009)) "The first two factors are the 'most critical.'" *Id.* For the reasons set forth herein, Defendants are entitled to a stay.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Intervenor Republican Party of Florida respectfully requests that this Court deny Plaintiffs' Motion.

Respectfully submitted,

*By: s/Frank A. Zacherl*
Frank A. Zacherl, Esq.
FZacherl@shutts.com
FL Bar No. 0868094
**SHUTTS & BOWEN LLP**
200 South Biscayne Boulevard
Suite 4100
Miami, FL  33131
Telephone:  (305) 358-6300
Facsimile:  (305) 381-9982
LMFernandez@shutts.com
*Attorneys for Republican Party of Florida*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 15, 2018, I caused to be electronically filed the foregoing Notice of Appearance with the Clerk of Court

using the CM/ECF system, which will send notification of such filing to all attorneys of record.

By: s/ Frank A. Zacherl

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(F), I HEREBY CERTIFY that the enclosed Response and Memorandum of Law contains approximately 6,722 words, and counsel relies on the word count function of the computer program used to prepare this filing.

By: s/ Frank A. Zacherl

# EXHIBIT "A"

**Summarizing Chart:**
**Deadline for Receipt of Absentee Ballot by Mail after Election Day**

| STATE |
|---|
| Alaska |
| California |
| Iowa |
| Maryland |
| New York |
| North Carolina |
| North Dakota |
| Ohio |
| Pennsylvania |
| Texas |
| Utah |
| Washington |
| West Virginia |

## Deadline for Receipt of Absentee Ballot by Mail on Election Day or Earlier

| STATE |
|---|
| Arizona |
| Arkansas |
| Colorado |
| Connecticut |
| Delaware |
| Washington, D.C. |
| Florida |
| Georgia |
| Hawaii |
| Idaho |
| Illinois |
| Indiana |
| Kansas |
| Kentucky |
| Louisiana |
| Maine |
| Massachusetts |
| Michigan |
| Minnesota |
| Missouri |
| Montana |
| Mississippi |
| Nebraska |
| Nevada |
| New Hampshire |
| New Jersey |
| New Mexico |
| Oklahoma |
| Oregon |
| Rhode Island |
| South Carolina |
| South Dakota |
| Tennessee |
| Vermont |
| Virginia |
| Wisconsin |
| Wyoming |

**Deadline for Receipt of Absentee Ballot by Mail after Election Day**

*Alaska*: Alaska Stat. Ann. § 15.20.081(e) (West)
"(e) An absentee ballot must be marked on or before the date of the election. Except as provided in (h) of this section, a voter who returns the absentee ballot by mail, whether provided to the voter by mail or by electronic transmission, shall use a mail service at least equal to first class and mail the ballot not later than the day of the election to the election supervisor for the house district in which the voter seeks to vote. Except as provided in AS 15.20.480, the ballot may not be counted unless it is received by the close of business on the 10th day after the election. If the ballot is postmarked, it must be postmarked on or before election day. After the day of the election, ballots may not be accepted unless received by mail."

*California*: Cal. Elec. Code § 4103 (West)
"(a) Notwithstanding Section 3020, ballots cast under this chapter shall be returned to the elections official from whom they were obtained no later than 8 p.m. on election day.
(b) Notwithstanding subdivision (a), any vote by mail ballot cast under this chapter shall be timely cast if it is received by the voter's elections official via the United States Postal Service or a bona fide private mail delivery company no later than three days after election day and either of the following is satisfied:
(1) The ballot is postmarked on or before election day or is time stamped or date stamped by a bona fide private mail delivery company on or before election day.
(2) If the ballot has no postmark, a postmark with no date, or an illegible postmark, the vote by mail ballot identification envelope is date stamped by the elections official upon receipt of the vote by mail ballot from the United States Postal Service or a bona fide private mail delivery company, and is signed and dated pursuant to Section 3011 on or before election day.
(c) For purposes of this section, "bona fide private mail delivery company" means a courier service that is in the regular business of accepting a mail item, package, or parcel for the purpose of delivery to a person or entity whose address is specified on the item."

*Iowa*: Iowa Code Ann. § 53.17(2,3) (West)
"2. In order for the ballot to be counted, the return envelope must be received in the commissioner's office before the polls close on election day or be clearly postmarked by an officially authorized postal service or bear an intelligent mail barcode traceable to a date of entry into the federal mail system not later than the day before the election and received by the commissioner not later than noon on the Monday following the election.
3. If the law authorizing the election specifies that the supervisors canvass the votes earlier than the Monday following the election, absentee ballots returned through the mail must be received not later than the time established for the canvass by the board of supervisors for that election. The commissioner shall contact the post office serving the commissioner's office at the latest practicable hour before the canvass by the board of supervisors for that election, and shall arrange for absentee ballots received in that post office but not yet delivered to the commissioner's office to be brought to the commissioner's office before the canvass for that election by the board of supervisors."

*Maryland*: Md. Code Ann., Elec. Law § LAW § 9-505 (West)
"a) A vote-by-mail ballot is considered timely and may be counted if the ballot:

(1) is returned in person to the office of a local board by the voter or the voter's duly authorized agent no later than 8 p.m. on the day of a special election; or

(2)(i) is received by mail by a local board no later than 10 a.m. on the second Friday after a special election; and

(ii) was mailed on or before election day, as verified:

1. by a postmark; or

2. if the return envelope does not contain a postmark or the postmark is illegible, by the voter's affidavit that the ballot was mailed on or before election day.

Failure of ballot to meet requirements of section

(b) A vote-by-mail ballot that does not meet the requirements of subsection (a) of this section is not timely and may not be counted."

*New York*: N.Y. Elec. Law § 8-412 (McKinney)

"1. The board of elections shall cause all absentee ballots received by it before the close of the polls on election day and all ballots contained in envelopes showing a cancellation mark of the United States postal service or a foreign country's postal service, or showing a dated endorsement of receipt by another agency of the United States government, with a date which is ascertained to be not later than the day before election and received by such board of elections not later than seven days following the day of election to be cast and counted except that the absentee ballot of a voter who requested such ballot by letter, rather than application, shall not be counted unless a valid application form, signed by such voter, is received by the board of elections with such ballot.

2. Absentee ballots received by the board of elections shall be retained at the board of elections and cast and canvassed pursuant to the provisions of section 9-209 of this chapter."

*North Carolina*: N.C. Gen. Stat. Ann. § 163A-1310 (West)

"(a) Procedure for Voting Absentee Ballots.--In the presence of two persons who are at least 18 years of age, and who are not disqualified by G.S. 163A-1298(a)(4) or G.S. 163A-1317(c), the voter shall do all of the following:

(1) Mark the voter's ballots, or cause them to be marked by that person in the voter's presence according to the voter's instruction.

(2) Fold each ballot separately, or cause each of them to be folded in the voter's presence.

(3) Place the folded ballots in the container-return envelope and securely seal it, or have this done in the voter's presence.

(4) Make the application printed on the container-return envelope according to the provisions of G.S. 163A-1307(b) and make the certificate printed on the container-return envelope according to the provisions of G.S. 163A-1307(b).

(5) Require those two persons in whose presence the voter marked that voter's ballots to sign the application and certificate as witnesses and to indicate those persons' addresses. Failure to list a ZIP code does not invalidate the application and certificate.

Alternatively to the prior paragraph of this subsection, any requirement for two witnesses shall be satisfied if witnessed by one notary public, who shall comply with all the other requirements of that paragraph. The notary shall affix a valid notarial seal to the envelope, and include the word "Notary Public" below his or her signature.

The persons in whose presence the ballot is marked shall at all times respect the secrecy of the ballot and the privacy of the absentee voter, unless the voter requests assistance and that person

is otherwise authorized by law to give assistance. When thus executed, the sealed container-return envelope, with the ballots enclosed, shall be transmitted in accordance with the provisions of subsection (b) of this section to the county board of elections which issued the ballots.

(b) Transmitting Executed Absentee Ballots to County Board of Elections.--The sealed container-return envelope in which executed absentee ballots have been placed shall be transmitted to the county board of elections who issued those ballots as follows:

(1) All ballots issued under the provisions of this Part and Part 2 of Article 21 of this Chapter shall be transmitted by mail or by commercial courier service, at the voter's expense, or delivered in person, or by the voter's near relative or verifiable legal guardian and received by the county board not later than 5:00 p.m. on the day of the statewide primary or general election or county bond election. Ballots issued under the provisions of Part 2 of Article 21 of this Chapter may also be electronically transmitted.

(2) If ballots are received later than the hour stated in subdivision (1) of this subsection, those ballots shall not be accepted unless one of the following applies:

a. Federal law so requires.

b. The ballots issued under this Part are postmarked and that postmark is dated on or before the day of the statewide primary or general election or county bond election and are received by the county board of elections not later than three days after the election by 5:00 p.m.

c. The ballots issued under Part 2 of Article 21 of this Chapter are received by the county board of elections not later than the end of business on the business day before the canvass conducted by the county board of elections held pursuant to G.S. 163A-1172.

(c) For purposes of this section, "Delivered in person" includes delivering the ballot to an election official at a one-stop voting site under G.S. 163A-1300, 163A-1301, 163A-1302, 163A-1303, and 163A-1304 during any time that site is open for voting. The ballots shall be kept securely and delivered by election officials at that site to the county board of elections office for processing."

*North Dakota*: N.D. Cent. Code Ann. § 16.1-07-09 (West)
"In the case of congressional, state, county, city, or school district elections, if an envelope postmarked or otherwise officially marked by the United States postal service or other mail delivery system before the date of election and containing an absent voter's ballot is received by the officer too late to be forwarded to a polling place of the proper voting precinct in time to be tabulated, the ballot must be tallied by the canvassing board of the county, the governing body of the city, or the school board of the school district, as the case may be, at the time the returns are canvassed. Any envelope without a postmark or other official marking by the United States postal service or other mail delivery system or with an illegible postmark or other official marking and containing an absentee voter's ballot must be received by mail by the proper officer prior to the meeting of the canvassing board. An absent voter may personally deliver the absent voter's ballot to the appropriate officer's office at any time before five p.m. on the day before the election. Any envelope containing an absent voter's ballot with a postmark or official date stamp on the day of election or thereafter may not be tallied with the ballots timely submitted for the election. Before forwarding any ballot to a canvassing board pursuant to this section, the officer forwarding the ballot shall print the date of receipt on the envelope. Upon receipt, the canvassing board shall determine that the elector was qualified to vote in that precinct, that the elector did not previously vote in that precinct on the date of the election, and that the signatures on the

absentee ballot application and the voter's affidavit were signed by the same person before allowing the ballot to be tallied."

*Ohio*: Ohio Rev. Code Ann. § 3509.05(B)(1) (West)
"(B)(1) Except as otherwise provided in division (B)(2) of this section, any return envelope that is postmarked prior to the day of the election shall be delivered to the director prior to the eleventh day after the election. Ballots delivered in envelopes postmarked prior to the day of the election that are received after the close of the polls on election day through the tenth day thereafter shall be counted on the eleventh day at the board of elections in the manner provided in divisions (C) and (D) of section 3509.06 of the Revised Code or in the manner provided in division (E) of that section, as applicable. Any such ballots that are received by the director later than the tenth day following the election shall not be counted, but shall be kept by the board in the sealed identification envelopes as provided in division (A) of this section."

*Pennsylvania*
"(a) Except as provided in paragraphs (1), (2) and (3), at any time after receiving an official absentee ballot, but on or before five o'clock P.M. on the Friday prior to the primary or election, the elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Absentee Ballot.'."
25 Pa. Stat. Ann. § 3146.6 (West)
(g) (1) An absentee ballot cast by any absentee elector as defined in section 1301(a), (b), (c), (d), (e), (f), (g) and (h)[5] which is received in the office of the county board of elections after five o'clock P.M. on the Friday immediately preceding the election and no later than five o'clock P.M. on the seventh day following an election shall be canvassed in accordance with this subsection if the absentee ballot is postmarked no later than the day immediately preceding the election.
(2) The county board of elections shall meet on the eighth day following the election to canvass the absentee ballots received under this subsection and subsection (h)(2). One authorized representative of each candidate in an election and one representative from each political party shall be permitted to remain in the room in which the absentee ballots are canvassed. Representatives shall be permitted to challenge any absentee elector in accordance with the provisions of paragraph (3).
(3) When the county board meets to canvass absentee ballots under paragraph (2), the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d) and shall compare the information thereon with that contained in the "Registered Absentee Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File," whichever is applicable. If the county board has verified the proof of identification as required under this act and is satisfied that the declaration is sufficient and the information contained in the "Registered Absentee Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File" verifies his right to vote, the county board shall announce the name of the elector and shall give any candidate representative or party representative present an opportunity to challenge any absentee elector upon the ground or grounds: (i) that the absentee elector is not a qualified elector; or (ii) that the absentee elector was within the municipality of his residence on the day of the primary or election during the period the polls were open, except where he was in the military service or except in the case

where his ballot was obtained for the reason that he was unable to appear personally at the polling place because of illness or physical disability; or (iii) that the absentee elector was able to appear personally at the polling place on the day of the primary or election during the period the polls were open in the case his ballot was obtained for the reason that he was unable to appear personally at the polling place because of illness or physical disability. Upon challenge of any absentee elector, as set forth herein, the board shall mark "challenged" on the envelope together with the reasons therefor, and the same shall be set aside unopened pending final determination of the challenge according to the procedure described in paragraph (5).

(4) All absentee ballots not challenged for any of the reasons provided in paragraph (3) shall be counted and included with the returns of the applicable election district as follows. The county board shall open the envelope of every unchallenged absentee elector in such manner as not to destroy the declaration executed thereon. If any of the envelopes on which are printed, stamped or endorsed the words "Official Absentee Ballot" contain any extraneous marks or identifying symbols, the envelopes and the ballots contained therein shall be set aside and declared void. The county board shall then break the seals of such envelopes, remove the ballots and record the votes.

(5) With respect to the challenged ballots, they shall be placed unopened in a secure, safe and sealed container in the custody of the county board until it shall fix a time and place for a formal hearing of all such challenges, and notice shall be given where possible to all absentee electors thus challenged and to every individual who made a challenge. The time for the hearing shall not be later than five (5) days after the date of the challenge. On the day fixed for said hearing, the county board shall proceed without delay to hear said challenges, and, in hearing the testimony, the county board shall not be bound by the Pennsylvania Rules of Evidence. The testimony presented shall be stenographically recorded and made part of the record of the hearing.

(6) The decision of the county board in upholding or dismissing any challenge may be reviewed by the court of common pleas of the county upon a petition filed by any person aggrieved by the decision of the county board. The appeal shall be taken, within two (2) days after the decision was made, whether the decision was reduced to writing or not, to the court of common pleas setting forth the objections to the county board's decision and praying for an order reversing the decision.

(7) Pending the final determination of all appeals, the county board shall suspend any action in canvassing and computing all challenged ballots received under this subsection irrespective of whether or not appeal was taken from the county board's decision. Upon completion of the computation of the returns of the county, the votes cast upon the challenged official absentee ballots that have been finally determined to be valid shall be added to the other votes cast within the county.

25 Pa. Stat. Ann. § 3146.8 (West)

*Texas*: TX ELECTION §  86.007 (West)
"(a) Except as provided by Subsection (d), a marked ballot voted by mail must arrive at the address on the carrier envelope:
(1) before the time the polls are required to close on election day; or
(2) not later than 5 p.m. on the day after election day, if the carrier envelope was placed for delivery by mail or common or contract carrier before election day and bears a cancellation mark of a common or contract carrier or a courier indicating a time not later than 7 p.m. at the location of the election on election day.

(b) If the early voting clerk cannot determine whether a ballot arrived before the deadline, the ballot is considered to have arrived at the time the place at which the carrier envelopes are deposited was last inspected for removal of returned ballots. The clerk shall check for returned ballots, at least once before the deadline, after the normal delivery time on the last day at the place at which the carrier envelopes are deposited.

(c) A marked ballot that is not timely returned may not be counted.

(d) A marked ballot voted by mail that arrives after the time prescribed by Subsection (a) shall be counted if:

(1) the ballot was cast from an address outside the United States;

(2) the carrier envelope was placed for delivery before the time the ballot is required to arrive under Subsection (a)(1); and

(3) the ballot arrives at the address on the carrier envelope not later than the fifth day after the date of the election.

(d-1) If the deadline for the arrival of a ballot voted by mail falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day.

(e) A delivery under Subsection (a)(2) or (d) is timely, except as otherwise provided by this title, if the carrier envelope or, if applicable, the envelope containing the carrier envelope:

(1) is properly addressed with postage or handling charges prepaid; and

(2) bears a cancellation mark of a recognized postal service or a receipt mark of a common or contract carrier or a courier indicating a time before the deadline.

(f) The envelope must bear the cancellation mark or receipt mark as required by Subsection (e)(2) to be timely under this section .

(g) The secretary of state shall prescribe procedures as necessary to implement Subsection (d).”

*Utah*: Utah Code Ann. § 20A-3-306(2) (West)

“(2) Except as provided by Section 20A-1-308, an absentee ballot is not valid unless:

(a) in the case of an absentee ballot that is voted in person, the ballot is:

(i) applied for and cast in person at the office of the appropriate election officer no later than the Tuesday before election day; or

(ii) submitted on election day at a polling location in the political subdivision where the absentee voter resides;

(b) in the case of an absentee ballot that is submitted by mail, the ballot is:

(i) clearly postmarked before election day, or otherwise clearly marked by the post office as received by the post office before election day; and

(ii) received in the office of the election officer before noon on the day of the official canvass following the election[1]; or

(c) in the case of a military-overseas ballot, the ballot is submitted in accordance with Section 20A-16-404.”

*Washington*: Wash. Rev. Code Ann. § 29A.40.091(4) (West)

“(4) The voter must be instructed to either return the ballot to the county auditor no later than 8:00 p.m. the day of the election or primary, or mail the ballot to the county auditor with a

---

[1] Plaintiff's Complaint at Paragraph 21 claims that this statute says “Postmarked 1 day before Election Day and received 6 days after Election Day,” but the statute says that it must be received by noon on the canvassing day, not 6 days later.

postmark no later than the day of the election or primary.[2] Service and overseas voters must be provided with instructions and a privacy sheet for returning the ballot and signed declaration by fax or email. A voted ballot and signed declaration returned by fax or email must be received by 8:00 p.m. on the day of the election or primary."

*West Virginia*: W. Va. Code Ann. § 3-3-5(g,h) (West)
"(g) Except as provided in subsection (h) of this section, absentee ballots returned by United States mail or other express shipping service are to be accepted if:
(1) The ballot is received by the official designated to supervise and conduct absentee voting no later than the day after the election; or
(2) The ballot bears a postmark of the United States Postal Service dated no later than election day and the ballot is received by the official designated to supervise and conduct absentee voting no later than the hour at which the board of canvassers convenes to begin the canvass.[3]
(h) Absentee ballots received through the United States mail from persons eligible to vote an absentee ballot under the provisions of subdivision (3), subsection (b), section one of this article, relating to uniform services and overseas voters, are to be accepted if the ballot is received by the official designated to supervise and conduct absentee voting no later than the hour at which the board of canvassers convenes to begin the canvass."

### **Deadline for Receipt of Absentee Ballot by Mail on Election Day or Earlier**
*Arizona*: Ariz. Rev. Stat. Ann. § 16-558.01
"Not more than twenty-seven days before the election and not fewer than fifteen days before the election, the county recorder or other officer in charge of elections for the special district shall send by nonforwardable mail all official ballots with printed instructions and a return envelope bearing a printed ballot affidavit as described in § 16-547 to each qualified elector entitled to vote in the election. The envelope in which the ballot is mailed shall be clearly marked with the statement required by the postmaster to receive an address correction and notification. The district governing board shall determine whether the voter or the district governing board will pay for the postage for the return of electors' marked ballots. An elector who votes in a special district mail ballot election shall return the elector's marked ballot to the recorder or other officer in charge of the election or to a designated depository site as provided in § 16-411 no later than 7:00 p.m. on the day of the election."

*Arkansas*: Ark. Code Ann. § 7-5-411 (West)
"(a) Absentee voting may be accomplished in one (1) of the following methods and in no other manner:
(1)(A) By delivery of the ballot by mail that must be received in the office of the county clerk of the county of residence of the voter not later than 7:30 p.m. on election day.
(B)(i) However, except as provided in subdivision (a)(1)(B)(ii) of this section, by ballots applied for not later than thirty (30) days before the election by qualified electors outside the United

---

[2] Plaintiff's Complaint at Paragraph 21 claims that this statute says Postmarked by Election Day and received 5 days after Election Day," but the number of days is not specified in the statute.
[3] Plaintiff's Complaint at Paragraph 21 claims that this statute says "Postmarked by Election Day and received by 6 days after Election Day; ballots with no postmark are counted if received by 1 day after Election Day," but it does not mention that the voter has six days. It only says that the "ballot is received by the official designated to supervise and conduct absentee voting no later than the hour at which the board of canvassers convenes to begin the canvass."

States on election day that are signed, dated, postmarked, and mailed by the voters no later than the day of the election and received by the county clerk no later than 5:00 p.m. ten (10) calendar days after the date of the election.

(ii) The absentee ballots of armed services personnel serving in active status shall be counted if received by the county clerk no later than 5:00 p.m. ten (10) calendar days after the date of the election and if the absentee ballots were executed no later than the date of the election.

(C) Each absentee ballot shall be mailed separately by the voter and shall not be included with any other absentee ballot in a bulk mailing, except that an administrator of a long-term care or residential care facility licensed by the State of Arkansas or hospital may mail the absentee ballots of the residents and patients by bulk mail. Absentee ballots in any bulk mailing not otherwise permitted in this subsection shall not be counted;

(2) By delivery of the ballot to the county clerk of the county of residence of the voter not later than 7:30 p.m. on election day by the designated bearer, administrator, or the authorized agent of the absentee voter who is medically unable to vote at the regular polling site, upon proper verification of the signature of the voter by the county clerk and validation of the identity of the authorized agent; or

(3) The voter may deliver the ballot to the county clerk of the county of his or her residence not later than the close of regular business hours on the day before the election.

(b) Any person to whom an absentee ballot is delivered according to the precinct voter registration list but who elects to vote by early voting or to vote at his or her polling site on election day shall be permitted to cast a provisional ballot."

*Colorado*: Colo. Rev. Stat. Ann. § 1-13.5-1006(1) (West)
"Any eligible elector applying for and receiving an absentee voter's ballot, in casting the ballot, shall make and subscribe to the self-affirmation on the return envelope. The voter shall then mark the ballot. The voter shall fold the ballot so as to conceal the marking, deposit it in the return envelope, and seal the envelope securely. The envelope may be delivered personally or mailed by the voter to the designated election official issuing the ballot. It is permissible for a voter to deliver the ballot to any person of the voter's own choice or to any duly authorized agent of the designated election official for mailing or personal delivery to the designated election official. To be counted, all envelopes containing absentee voter's ballots must be in the hands of the designated election official or an election judge for the local government not later than 7 p.m. on election day."

*Connecticut*: Conn. Gen. Stat. Ann. § 9-140b(a) (West)
"a) An absentee ballot shall be cast at a primary, election or referendum only if: (1) It is mailed by (A) the ballot applicant, (B) a designee of a person who applies for an absentee ballot because of illness or physical disability, or (C) a member of the immediate family of an applicant who is a student, so that it is received by the clerk of the municipality in which the applicant is qualified to vote not later than the close of the polls; (2) it is returned by the applicant in person to the clerk by the day before a regular election, special election or primary or prior to the opening of the polls on the day of a referendum; (3) it is returned by a designee of an ill or physically disabled ballot applicant, in person, to said clerk not later than the close of the polls on the day of the election, primary or referendum; (4) it is returned by a member of the immediate family of the absentee voter, in person, to said clerk not later than the close of the polls on the day of the election, primary or referendum; (5) in the case of a presidential or overseas ballot, it is mailed or

otherwise returned pursuant to the provisions of section 9-158g; or (6) it is returned with the proper identification as required by the Help America Vote Act, P.L. 107-252,1 as amended from time to time, if applicable, inserted in the outer envelope so such identification can be viewed without opening the inner envelope. A person returning an absentee ballot to the municipal clerk pursuant to subdivision (3) or (4) of this subsection shall present identification and, on the outer envelope of the absentee ballot, sign his name in the presence of the municipal clerk, and indicate his address, his relationship to the voter or his position, and the date and time of such return. As used in this section, "immediate family" means a dependent relative who resides in the individual's household or any spouse, child or parent of the individual."

*Delaware*: Del. Code Ann. tit. 15, § 7578 (West)
"At any time between the opening and the closing of the polls on an election day, absentee election judges selected by a municipality's board of elections, shall count absentee ballots at a properly noticed public meeting in the municipality's offices or at the place of the election, at the municipality's discretion, in accordance with the procedures set out below. Anything herein to the contrary notwithstanding, at the discretion of the municipality, the board of elections may itself act as the absentee election judges."

*Washington DC*: D.C. Code Ann. § 1-1001.10
"(b)(1) All elections prescribed by this subchapter shall be conducted by the Board in conformity with the provisions of this subchapter. In all elections held pursuant to this subchapter, the polls shall be open from 7:00 a.m. to 8:00 p.m., except in instances when the time established for closing the polls is extended pursuant to a federal or District court order or any other order. The Board may, upon request of the precinct captain or upon its own initiative, if an emergency exists by reason of mechanical failure of a voting machine, an unanticipated shortage of ballots, excessive wait times, bomb threats, or similar unforeseen event warrants it, extend the polling hours for that precinct until the emergency situation has been resolved. Candidates who receive the highest number of votes, other than candidates for election as political party officials or delegates to national conventions nominating candidates for President and Vice President of the United States, shall be declared winners. If after the date of an election and prior to the certification of the election results, the qualified candidate who has received the highest number of votes dies, withdraws, or is found to be ineligible to hold the office, or in the event no candidate qualifies for election, the Board shall declare no winner, and the office shall become vacant as of the date of the beginning of the term of office for which the election was held. With respect to a primary election, the position of candidate shall be vacant until filled pursuant to subsection (d) of this section.
(2)(A) No person shall canvass, electioneer, circulate petitions, post any campaign material or engage in any activity that interferes with the orderly conduct of the election within a polling place or within a 50-foot distance from the entrance and exit of a polling place. The Board, by regulation, shall establish procedures for determination and clear marking of the 50-foot distance.
(B) A person who violates the provisions of this paragraph shall, upon conviction, be fined not less than $50 or more than $500 or imprisoned for not more than 30 days, or both."

*Florida*: § 101.6103, Fla. Stat. Ann. (Jan. 1 2008)
 (5) A ballot shall be counted only if:

(a) It is returned in the return mailing envelope;

(b) The elector's signature has been verified as provided in this subsection; and

(c) It is received by the supervisor of elections not later than 7 p.m. on the day of the election. The supervisor of elections shall verify the signature of each elector on the return mailing envelope with the signature on the elector's registration records. Such verification may commence at any time prior to the canvass of votes. The supervisor of elections shall safely keep the ballot unopened in his or her office until the county canvassing board canvasses the vote. If the supervisor of elections determines that an elector to whom a replacement ballot has been issued under subsection (4) has voted more than once, the canvassing board shall determine which ballot, if any, is to be counted.

(6) The canvassing board may begin the canvassing of mail ballots at 7 a.m. on the sixth day before the election, including processing the ballots through the tabulating equipment. However, results may not be released until after 7 p.m. on election day. Any canvassing board member or election employee who releases any result before 7 p.m. on election day commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(7) With respect to absent electors overseas entitled to vote in the election, the supervisor of elections shall mail an official ballot with a secrecy envelope, a return mailing envelope, and instructions sufficient to describe the voting process to each such elector on a date sufficient to allow such elector time to vote in the election and to have his or her marked ballot reach the supervisor by 7 p.m. on the day of the election.

(8) A ballot that otherwise satisfies the requirements of subsection (5) shall be counted even if the elector dies after mailing the ballot but before election day, as long as, prior to the death of the voter, the ballot was:

(a) Postmarked by the United States Postal Service;

(b) Date-stamped with a verifiable tracking number by common carrier; or

(c) Already in the possession of the supervisor of elections.


*Georgia*: Ga. Code Ann. § 21-2-386 (West)

(F) All absentee ballots returned to the board or absentee ballot clerk after the closing of the polls on the day of the primary or election shall be safely kept unopened by the board or absentee ballot clerk and then transferred to the appropriate clerk for storage for the period of time required for the preservation of ballots used at the primary or election and shall then, without being opened, be destroyed in like manner as the used ballots of the primary or election. The board of registrars or absentee ballot clerk shall promptly notify the elector by first-class mail that the elector's ballot was returned too late to be counted and that the elector will not receive credit for voting in the primary or election. All such late absentee ballots shall be delivered to the appropriate clerk and stored as provided in Code Section 21-2-390.


*Hawaii*: Haw. Rev. Stat. Ann. § 15-9 (West)

(a) The return envelope shall be:

(1) Mailed and must be received by the clerk issuing the absentee ballot not later than the closing of the polls on any election day;

(2) Delivered other than by mail to the clerk issuing the absentee ballot, or another election official designated by the clerk to act on the clerk's behalf, not later than the closing of polls on any election day; or

(3) Delivered other than by mail to any polling place within the county in which the voter is registered and deposited by a precinct official in the ballot box before the closing of the polls on any election day.

*Idaho*: Idaho Code Ann. § 34-1005 (West)
"The return envelope shall be mailed or delivered to the officer who issued the same; provided, that an absentee ballot must be received by the issuing officer by 8:00 p.m. on the day of election before such ballot may be counted.
Upon receipt of an absent elector's ballot the county clerk of the county wherein such elector resides shall verify the authenticity of the affidavit and shall write or stamp upon the envelope containing the same, the date and hour such envelope was received in his office and record the information pursuant to section 34-1011, Idaho Code. He shall safely keep and preserve all absent electors' ballots unopened until the time prescribed for delivery to the polls or to the central count ballot processing center."

*Illinois*: 10 Ill. Comp. Stat. Ann. 5/19-6
"Such vote by mail voter shall make and subscribe to the certifications provided for in the application and on the return envelope for the ballot, and such ballot or ballots shall be folded by such voter in the manner required to be folded before depositing the same in the ballot box, and be deposited in such envelope and the envelope securely sealed. The voter shall then endorse his certificate upon the back of the envelope and the envelope shall be mailed in person by such voter, postage prepaid, to the election authority issuing the ballot or, if more convenient, it may be delivered in person, by either the voter or by any person authorized by the voter, or by a company licensed as a motor carrier of property by the Illinois Commerce Commission under the Illinois Commercial Transportation Law,1 which is engaged in the business of making deliveries. It shall be unlawful for any person not the voter or a person authorized by the voter to take the ballot and ballot envelope of a voter for deposit into the mail unless the ballot has been issued pursuant to application by a physically incapacitated elector under Section 3-3 or a hospitalized voter under Section 19-13, in which case any employee or person under the direction of the facility in which the elector or voter is located may deposit the ballot and ballot envelope into the mail. If the voter authorized a person to deliver the ballot to the election authority, the voter and the person authorized to deliver the ballot shall complete the authorization printed on the exterior envelope supplied by an election authority for the return of the vote by mail ballot."

*Indiana*: Ind. Code Ann. § 3-11-10-26(f) (West)
"The voter may vote before the board not more than twenty-eight (28) days nor later than noon on the day before election day. If the close of a voter registration period is transferred under IC 3-5-4-1.5 from twenty-nine (29) days to a later date due to the Columbus Day holiday, the voter may vote before the board on the first day following the day on which the voter registration period closes."

*Kansas*: Kan. Stat. Ann. § 25-1222 (West)
The votes cast as provided in this act shall be canvassed, counted and certified in the same manner, as nearly as may be practicable as the votes that were cast within such precinct were canvassed, counted and certified, but no official federal services absentee ballot shall be valid:
(1) If the voter has voted in person or by absentee ballot in accordance with the procedure

provided by any other law of this state; or (2) if it is received by the precinct election board of the voter's residence after the hour of the closing of the polls on the date of the holding of the election.

*Kentucky*: Ky. Rev. Stat. Ann. § 117.086(1) (West)
"The voter returning his absentee ballot by mail shall mark his ballot, seal it in the inner envelope and then in the outer envelope, and mail it to the county clerk as shall be provided by this chapter. The voter shall sign the detachable flap and the outer envelope in order to validate the ballot. A person having power of attorney for the voter and who signs the detachable flap and outer envelope for the voter shall complete the voter assistance form as required by KRS 117.255. The signatures of two (2) witnesses are required if the voter signs the form with the use of a mark instead of the voter's signature. A resident of Kentucky who is a covered voter as defined in KRS 117A.010 who has received an absentee ballot transmitted by facsimile machine or by means of the electronic transmission system established under KRS 117A.030(4) shall transmit the voted ballot to the county clerk by mail only, conforming with ballot security requirements that may be promulgated by the state board by administrative regulation. In order to be counted, the ballots shall be received by the clerk by at least the time established by the election laws generally for the closing of the polls, which time shall not include the extra hour during which those voters may vote who were waiting in line to vote at the scheduled poll closing time."

*Louisiana*: La. Stat. Ann. § 18:1313(B)(1)
"Absentee by mail and early voting ballots shall be counted at a public facility within the parish designated by the registrar of voters at a time fixed by the parish board of election supervisors, which time shall be on election day no later than 8:00 p.m."

*Maine*: Me. Rev. Stat. tit. 21-A, § 755
"In order to be valid, an absentee ballot must be delivered to the municipal clerk at any time before the polls are closed."

*Massachusetts*: Mass. Gen. Laws Ann. ch. 54, § 99 (West)
"All envelopes received by clerks of cities and towns after the hour fixed for closing of the polls on the day of election shall be retained by them unopened until the time set by law for the destruction of ballots cast, at which time the envelopes shall likewise be destroyed, unopened and unexamined; provided, however, that such envelopes received within ten days following a state or city final election and mailed on or before the day of election, from a location outside the United States, shall be processed in accordance with the second paragraph of section ninety-five. A postmark, if legible, shall be evidence of the time of mailing."

*Michigan*: Mich. Comp. Laws Ann. § 168.764a (West)
Step 6. The ballot must reach the clerk or an authorized assistant of the clerk before the close of the polls on election day. An absent voter ballot received by the clerk or assistant of the clerk after the close of the polls on election day will not be counted.

*Minnesota*: Minn. Stat. Ann. § 203B.08 (Subd. 3. Procedures on receipt of ballots.) (West)

"When absentee ballots are returned to a county auditor or municipal clerk, that official shall stamp or initial and date the return envelope and place it in a secure location with other return envelopes received by that office. Within five days after receipt, the county auditor or municipal clerk shall deliver to the ballot board all ballots received, except that during the 14 days immediately preceding an election, the county auditor or municipal clerk shall deliver all ballots received to the ballot board within three days. Ballots received on election day either (1) after 3:00 p.m., if delivered in person; or (2) after 8:00 p.m., if delivered by mail or a package delivery service, shall be marked as received late by the county auditor or municipal clerk, and must not be delivered to the ballot board."

*Missouri*: Mo. Ann. Stat. § 115.291(2) (West)
"2. Except as provided in subsection 4 of this section, each absentee ballot that is not cast by the voter in person in the office of the election authority shall be returned to the election authority in the ballot envelope and shall only be returned by the voter in person, or in person by a relative of the voter who is within the second degree of consanguinity or affinity, by mail or registered carrier or by a team of deputy election authorities; except that covered voters, when sent from a location determined by the secretary of state to be inaccessible on election day, shall be allowed to return their absentee ballots cast by use of facsimile transmission or under a program approved by the Department of Defense for electronic transmission of election materials."

*Montana*: Mont. Code Ann. § 13-15-201(7)
"(7) For the purpose of this chapter, a marked absentee ballot is valid only if:
(a) the elector's signature on the affirmation on the signature envelope is verified pursuant to 13-13-241; and
(b) it is received before 8 p.m. on election day, except as provided in 13-21-206 and 13-21-226."

*Mississippi*: Miss. Code. Ann. § 23-15-699(6) (West)
"Each circuit clerk shall furnish a suitable electronic mail delivery (e-mail) address that can be used to allow absent voters to comply with the provisions of this subarticle. Absentee ballots returned by any absent voter as defined in Section 23-15-673 must be received by the registrar by 7:00 p.m. on the date of the election."

*Nebraska*: Neb. Rev. Stat. Ann. § 32-954
"Upon receipt of the official ballot, the registered voter shall mark it, seal the ballot in the identification envelope supplied with the ballot, sign the identification envelope, and comply with the instructions provided with the ballot. The voter may return the ballot to the election commissioner or county clerk by mailing it or by personally delivering it to the office of the election commissioner or county clerk. The deadline for receipt of the ballot is 5 p.m. on the date set for the election. The official ballot must be returned in the identification envelope. The registered voter shall, by signing the envelope, certify to the facts contained on the envelope. The election commissioner or county clerk shall keep the identification envelopes received from registered voters unopened in a fireproof safe or other suitable location which is locked until delivered to the counting board."

*Nevada*: Nev. Rev. Stat. Ann. § 293.317 (West)

"Absent ballots, including special absent ballots, received by the county or city clerk after the polls are closed on the day of election are invalid."

*New Hampshire*: N.H. Rev. Stat. Ann. § 657:22 (West)
"In any state election, a town or city clerk shall not accept any completed absentee ballots delivered to the clerk after 5:00 p.m. on election day except as provided in RSA 657:21-a, V [Special Assistance to Emergency Services Worker] and RSA 659:20-a [Assistance in Voting; Disabled Voter]. The clerk shall record absentee ballots received after such time in the statewide centralized voter registration database with the return date and shall mark the ballot as rejected due to absentee ballot receipt after election day. The clerk shall retain the unopened ballot until the time set for the destruction of other state election ballots as provided in RSA 659:100 at which time the envelopes shall likewise be destroyed, unopened and unexamined."

*New Jersey*: N.J. Stat. Ann. § 19:63-16 (West)
"d. (1) The sealed outer envelope with the inner envelope and the ballot enclosed therein shall then either be mailed to the county board of elections to which it is addressed or delivered personally by the voter or a bearer designated by the voter to the board. To be counted, the ballot must be received by the board or its designee before the time designated by R.S.19:15-2 or R.S.19:23-40 for the closing of the polls, as may be appropriate, on the day of an election."

*New Mexico*: N.M. Stat. Ann. § 1-6-16.1 (West)
"D. Upon receipt of the envelope containing replacement absentee ballots, the county clerk, no later than forty-eight hours after the close of the election, shall remove the transmittal envelopes and, without removing or opening the inner envelopes, determine that:
(1) the voter did in fact make application for an absentee ballot; and
(2) no absentee ballot was received by the county clerk from the voter by 7:00 p.m. on election day."

*Oklahoma*: Okla. Stat. Ann. tit. 26, § 14-104 (West)
"Absentee ballots shall be returned to the secretary of each county election board no later than 7:00 p.m. the day of the election; provided, absentee ballots that are hand delivered to the county election board as provided in Section 14-108 of this title shall be delivered no later than the end of regular business hours on the day prior to the date of the election."

*Oregon*: Or. Rev. Stat. Ann. § 253.070 (West)
"A ballot from an absent elector must be received by a county clerk not later than 8 p.m. of the day of the election."

*Rhode Island*:
"Mail ballots may be cast in the manner provided by law on or before election day; provided, that no mail ballot shall be counted unless it is received by the state board not later than the time prescribed by § 17-18-11 for the closing of polling places on election day.
17 R.I. Gen. Laws Ann. § 17-20-16 (West)
Elective meetings in all cities and towns shall be continuously kept open for voting until 8 p.m.; provided, that any qualified voter who is waiting in line to vote at 8 p.m. shall be entitled to cast

his or her vote. When all persons entitled to vote have been afforded a reasonable opportunity to do so, the polls shall be closed."
17 R.I. Gen. Laws Ann. § 17-18-11 (West)


*South Carolina*: S.C. Code Ann. § 7-15-385
"Upon receipt of the ballot or ballots, the absentee ballot applicant must mark each ballot on which he wishes to vote and place each ballot in the single envelope marked "Ballot Herein" which in turn must be placed in the return-addressed envelope. The applicant must then return the return-addressed envelope to the board of voter registration and elections by mail, by personal delivery, or by authorizing another person to return the envelope for him. The authorization must be given in writing on a form prescribed by the State Election Commission and must be turned in to the board of voter registration and elections at the time the envelope is returned. The voter must sign the form, or in the event the voter cannot write because of a physical handicap or illiteracy, the voter must make his mark and have the mark witnessed by someone designated by the voter. The authorization must be preserved as part of the record of the election, and the board of voter registration and elections must note the authorization and the name of the authorized returnee in the record book required by Section 7-15-330. A candidate or a member of a candidate's paid campaign staff including volunteers reimbursed for time expended on campaign activity is not permitted to serve as an authorized returnee for any person unless the person is a member of the voter's immediate family as defined in Section 7-15-310. The oath set forth in Section 7-15-380 must be signed and witnessed on each returned envelope. The board of voter registration and elections must record in the record book required by Section 7-15-330 the date the return-addressed envelope with witnessed oath and enclosed ballot or ballots is received by the board. The board must securely store the envelopes in a locked box within the office of the board of voter registration and elections."


*South Dakota*: S.D. Codified Laws § 12-19-12
"If an absentee ballot is delivered to a polling place after the polls are closed, the absentee ballot may not be counted or opened."


*Tennessee*: Tenn. Code Ann. § 2-6-303 (West)
"(a)(1) No later than four (4) hours prior to the closing of polls for all regularly scheduled November elections and no later than two (2) hours prior to the closing of polls for all other elections, or at such earlier time after the polls open as the county election commission may direct, on election day, the county election commission shall deliver the locked and sealed absentee ballot boxes and their keys to the counting board in the commission office.
(2) The county election commission shall also deliver to the counting board the poll books prepared by precinct by the administrator of elections as the absentee ballots were received, the binder of rejected absentee ballots by precinct, the absentee voting binder of duplicate permanent registration records by precinct, and any other supplies necessary or useful in the performance of the counting board's duties. However, in those counties in which computerized duplicate registration records are used, the administrator shall be relieved of the duty to deliver the absentee voting binder of duplicate permanent registration records by precincts. In counties in which computerized duplicate permanent registration records are used, the county election

commission shall deliver to the counting board a printed list, arranged by precinct, of those voters who voted or requested an absentee ballot.

(b) Any absentee ballot received by mail by the county election commission before the closing of the polls shall be processed as were absentee ballots received before election day. For ballots received after the ballot boxes are turned over to the counting board, the administrator shall not record the voters' names on the poll books or note that they voted on their duplicate permanent registration records but shall deliver the ballots to the counting board immediately after determining whether the ballots are entitled to be cast."

*Vermont*: Vt. Stat. Ann. tit. 17, § 2540 (West)
"(a) The town clerk shall send with all early voter absentee ballots and envelopes printed instructions, which may be included on the envelope, in substantially the following form: INSTRUCTIONS FOR EARLY OR ABSENTEE VOTERS
1. Mark the ballots.
2. Place them in this envelope.
3. Fill out and sign the certificate on the envelope.
4. Mail or deliver the envelope containing the ballots to the town clerk of the town where you are a registered voter in time to arrive not later than election day.
Note: If these ballots have been brought to you personally by two justices of the peace because of your illness or physical disability, just return them to the justices after you have signed the envelope. YOU HAVE THE RIGHT TO MARK YOUR BALLOTS IN PRIVATE--but if you ask for help in filling out the ballots, they will give it to you.
BE SURE TO FILL OUT AND SIGN THE CERTIFICATE ON THIS ENVELOPE OR YOUR VOTE WILL NOT COUNT!
(b) In the case of early absentee voting in a primary, the instructions shall also include appropriate instructions prepared by the secretary of state for separating and depositing unvoted ballots in a separate envelope provided and clearly marked for that purpose."

*Virginia*: Va. Code Ann. § 24.2-709 (West)
"A. Any ballot returned to the office of the general registrar in any manner except as prescribed by law shall be void.
Absentee ballots shall be returned to the general registrar before the closing of the polls. The registrar receiving the ballot shall (i) seal the ballot in an envelope with the statement or declaration of the voter, or both, attached to the outside and (ii) mark on each envelope the date, time, and manner of delivery.
No returned absentee ballot shall be deemed void because the inner envelope containing the voted ballot is imperfectly sealed so long as the outside envelope containing the ballot envelope is sealed.
B. Notwithstanding the provisions of subsection A, absentee ballots (i) received after the close of the polls on any election day, (ii) received before 5:00 p.m. on the second business day before the State Board meets to ascertain the results of the election pursuant to this title, (iii) requested on or before but not sent by the deadline for making absentee ballots available under § 24.2-612, and (iv) cast by an absentee voter who is eligible for an absentee ballot under subdivision 2 of § 24.2-700 shall be counted pursuant to the procedures set forth in this chapter and, if the voter is

found entitled to vote, included in the election returns. The electoral board shall prepare an amended certified abstract, which shall include the results of such ballots, and shall deliver such abstract to the State Board by the business day prior to its meeting pursuant to this title, and shall deliver a copy of such abstract to the general registrar to be available for inspection when his office is open for business.

C. Notwithstanding the provisions of clause (i) of subsection B of § 24.2-427, an absentee ballot returned by a voter in compliance with § 24.2-707 and this section who dies prior to the counting of absentee ballots on election day shall be counted pursuant to the procedures set forth in this chapter if the voter is found to have been entitled to vote at the time that he returned the ballot."

*Wisconsin*: Wis. Stat. Ann. § 7.52(1)(a) (West)
"The governing body of any municipality may provide by ordinance that, in lieu of canvassing absentee ballots at polling places under s. 6.88, the municipal board of absentee ballot canvassers designated under s. 7.53(2m) shall, at each election held in the municipality, canvass all absentee ballots received by the municipal clerk by 8 p.m. on election day."

*Wyoming*: Wyo. Stat. Ann. § 22-9-119 (West)
"An absentee ballot received by the clerk after the polls close shall not be voted. The clerk shall write on the inner envelope of such late absentee ballot "Rejected--received after the polls closed". These late ballots shall be kept by the clerk for at least two (2) years after the election or longer if required by federal law and then destroyed."