**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


VOTEVETS ACTION FUND;
DEMOCRATIC NATIONAL
COMMITTEE; and DSCC a/k/a
DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE,

        *Plaintiffs*,

        v.                CASE NO. 4:18-cv-00524-MW-CAS

KEN W. DETZNER, in his
official capacity as the Florida
Secretary of State,

        *Defendant*.

**ATTORNEY GENERAL'S BRIEF IN OPPOSITION TO
PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Plaintiffs ask this Court to block the enforcement of Florida election laws—

specifically, section 101.6103(5)(c), Florida Statutes, section 101.67(2), Florida

Statutes, and "any other source of state law that requires" the rejection of "vote by

mail ballots from eligible Florida voters that were postmarked prior to Election Day

and received within 10 days after Election Day." DE:4, ¶ 2. In Plaintiffs' view, these

laws "condition[] their right to vote entirely on the [purportedly] arbitrary actions of

[the] post office." DE:4-1, at 2. Plaintiffs also ask the Court to require the Secretary

of State "to issue a directive to Florida's Supervisors of Elections advising them that, in light of the Court's Order, all vote by mail ballots postmarked before Election Day and received by the Supervisor of Elections within 10 days of Election Day must be counted." DE:4, ¶ 2

Plaintiffs' constitutional claims lack merit and they are not entitled to the extraordinary relief they request. The statutes they challenge exist to facilitate the orderly and timely conclusion of statewide elections, and no court has ever held that the laws at issue—or other laws like them—impermissibly burden the right to vote or irrationally treat like voters differently. Accordingly, Plaintiffs have failed to demonstrate a strong likelihood of success on the merits of their claims.

Equitable and prudential considerations provide an independent basis for denying Plaintiffs' application for preliminary injunctive relief. Elections should be governed by rules put in place before votes have been cast. The election laws Plaintiffs ask this Court to strike down have been on the books for years. Nothing about those laws has changed since voters cast their ballots on November 6, and nothing prevented Plaintiffs from bringing this challenge well before the date of the election. Nevertheless, Plaintiffs did not file suit until November 12, nearly one week *after* an election was held pursuant to the laws Plaintiffs now ask this Court to enjoin.

Moreover, the remedy Plaintiffs request is far worse than the alleged problem they seek to resolve. Ordering the Supervisors of Elections in all sixty-seven Florida counties to dispense with the statutory deadlines would change the rules in the middle of an ongoing election and might well cause significant confusion and disruption. "[A]pplications for a preliminary injunction . . . have been consistently denied when they threaten to disrupt an orderly election," *see Perry v. Judd*, 471 F. App'x 219, 227 (4th Cir. 2012), and the Court should follow suit here, particularly since any deadline-based exigency is attributable to Plaintiffs' delay in bringing this lawsuit.

At bottom, Plaintiffs ask this Court, in this and several other pending cases filed in the last week, to rewrite Florida's election code and apply a new set of rules and procedures to the resolution of an ongoing election dispute. The Constitution, however, requires elections to be governed by laws that have been passed by the state Legislature, not judicially promulgated by the federal courts. *See* U.S. Const. Art. I, § 4, cl. 1; *see also Sugarman v. Dougall*, 413 U.S. 634, 647 (1973); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986). In addition, basic principles of procedural fairness dictate that elections be governed by rules set in place *before* the voters have cast their ballots, not *after* those votes have been cast and preliminary results publicized. Accordingly, a decision to grant Plaintiffs' requested relief would not just run afoul of well-settled legal principles; it would

also impair public confidence in the fairness and integrity of the State's election procedures.

Because Plaintiffs have failed to demonstrate that the challenged state laws are unconstitutional, and because they have otherwise failed to satisfy the stringent criteria for obtaining immediate injunctive relief, the motion for a preliminary injunction should be denied.

## ARGUMENT

A district court may issue a preliminary injunction only if the moving party shows "(1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015). "In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quotation marks and alteration omitted).

As explained below, Plaintiffs have not satisfied any of those four criteria. Accordingly, their motion should be denied.

# I.   Plaintiffs Have Failed To Show A Substantial Likelihood Of Success On The Merits.

Plaintiffs advance two theories that, in their view, render Florida's statutory deadline for acceptance of vote-by-mail ballots unconstitutional. Neither is substantially likely to succeed on the merits.

## A.   Florida's Vote-By-Mail Deadlines Do Not Impermissibly Burden The Right To Vote.

"Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Indeed, "there *must* be a *substantial* regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown,* 415 U.S. 724, 730 (1974) (emphases added). Because "[e]lection laws will invariably impose some burden upon individual voters," *Anderson v. Celebrezze,* 460 U.S. 780, 788 (1983), the U.S. Supreme Court has made clear that "the State's important regulatory interests are generally sufficient to justify" voting restrictions, *id*., so long as they are "reasonable" and "nondiscriminatory," *Burdick v. Takushi*, 504 U.S. at 434.

The deadlines challenged by Plaintiffs are reasonable, neutral, nondiscriminatory, and critical to ensuring that elections in Florida are concluded in an orderly, timely, and reliable manner. As an initial matter, the deadline imposed on those who choose to submit vote-by-mail ballots is precisely the same deadline

as those who choose to cast their votes at their polling place—7:00 p.m. on the evening of the election. *Compare* § 101.6103(5)(c), Fla. Stat. (mail ballot "shall be counted only if . . . [i]t is received by the supervisor of elections not later than 7 p.m. on the day of the election") *and id.* § 101.67(2) ("[A]ll marked absent electors' ballots to be counted must be received by the supervisor by 7 p.m. the day of the election."); *with id.* § 100.011(1) ("The polls shall be open at the voting places at 7:00 a.m., on the day of the election, and shall be kept open until 7:00 p.m., of the same day.").

In other words, those who choose to avail themselves of Florida law's vote-by-mail accommodation labor under the same deadline as any other domestic voter. To have a vote count, the vote must be received by the time the polls close on the eve of an election. The risk of a post-office delivery delay is not, for purposes of the constitutional analysis, any different than the risk that bad traffic or weather would keep a person from arriving at a polling place before the polling place closes on election night. In either event, such a risk does not outweigh the disruption and chaos that would occur if voters and election authorities may not rely on clear and reasonable deadlines for the receipt of ballots on election day.

For these reasons, at least one federal court has already rejected the precise argument that Plaintiffs advance here—*i.e.*, that section 101.67, Fla. Stat., should be reviewed "under a 'strict scrutiny' standard whereby Defendants must show that a

compelling state interest exists to justify their rejection of any domestic absentee ballots which were received after 7 p.m. on election day." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1375 (S.D. Fla. 2004). "Because § 101.67(2) only relates to the mechanics of the electoral process," the court found that "the correct standard to be applied . . . is whether Florida's important regulatory interests are sufficient to justify the restrictions imposed on their First and Fourteenth Amendment rights." *Id.* And because the Supreme Court had already concluded that "a state has a substantial interest in regulating their elections in order to make the elections 'fair and honest' and to ensure that 'some sort of order, rather than chaos, is to accompany the democratic processes,'" *id.* at 1376 (quoting *Burdick*, 504 U.S. at 443), the court held that "the State's interests in ensuring a fair and honest election and to count votes within a reasonable time justifies the light imposition on Plaintiffs' right to vote":

> Like the election laws in *Burdick* and *Rosario* [*v. Rockefeller*, 410 U.S. 752 (1973)], Florida's 7 p.m. deadline of returning ballots on election day does not disenfranchise a class of voters. Rather, § 101.67(2) merely imposes a time deadline by which Plaintiffs must return their votes to Defendants. Plaintiffs are still able to cast a ballot, however, they must either return their absentee ballots in sufficient time so that the votes are received by the 7 p.m. deadline or they must vote in person.

*Id.* at 1377.

The Supreme Court has clarified that "the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the

integrity of the democratic system." *Anderson*, 460 U.S. at 788. The deadlines imposed by Florida law are critical for maintaining this integrity. Simply put, they are neutral, reasonable, and necessary to maintain an orderly electoral process.

Moreover, voters are expressly informed of the pertinent rules, including the requirement that domestic vote-by-mail ballots be received "no later than 7 p.m. on the day of the election." Specifically, voters are told:

> READ THESE INSTRUCTIONS CAREFULLY
> BEFORE MARKING BALLOT.
>
> 1. VERY IMPORTANT. In order to ensure that your vote-by-mail ballot will be counted, it should be completed and returned as soon as possible so that it can reach the supervisor of elections of the county in which your precinct is located no later than 7 p.m. on the day of the election. However, if you are an overseas voter casting a ballot in a presidential preference primary or general election, your vote-by-mail ballot must be postmarked or dated no later than the date of the election and received by the supervisor of elections of the county in which you are registered to vote no later than 10 days after the date of the election.

§ 101.65, Fla. Stat.

For these reasons, the Florida deadlines do not impermissibly burden the right to vote.

**B.   Florida's Vote-By-Mail Deadlines Do Not Irrationally Subject Domestic And Overseas Vote-By-Mail Ballots To Disparate Treatment.**

Florida law provides that "[a] vote-by-mail ballot from an overseas voter" shall be counted if it (a) "is postmarked or dated no later than the date of the election" and (b) "is received by the supervisor of elections of the county in which the overseas

voter is registered no later than 10 days after the date of the election." § 101.6952(5),

Fla. Stat. A domestic voter's vote-by-mail ballot shall be counted only if it is both

postmarked and received by the supervisor of elections not later than 7 p.m. on the

day of the election." *See id.* § 101.6103(5)(c); *see also id.* § 101.67(2). Plaintiffs

appear to argue that this statutory scheme violates the Equal Protection Clause of the

Fourteenth Amendment by imposing different deadlines for overseas and domestic

vote-by-mail ballots, as they seek a court order directing "that all ballots postmarked

before November 6, 2018 and received by the supervisor of elections within 10 days

after Election Day should be counted in the general election." Compl. at 14.

Plaintiffs are incorrect.

A statute is subject to heightened scrutiny only if it "treats individuals

differently on the basis of race or another suspect classification" or burdens the

exercise of a "fundamental right." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*,

558 F.3d 1301, 1306 (11th Cir. 2009) (internal citation omitted). The challenged

deadlines do neither. "The right to vote by absentee ballot is not, in and of itself, a

fundamental right." *Zessar v. Helander*, No. 05-C-1917, 2006 WL 642646, at *5

(N.D. Ill. Mar. 13, 2006); *see Martin v. Kemp*, No. 1:18-CV-4776-LMM, 2018 WL

5276242, at *8 (N.D. Ga. Oct. 24, 2018) (ruling that absentee voting "is not

constitutionally on par with the fundamental right to vote" (citation and internal

quotation marks omitted)); *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762

F. Supp. 1354, 1358 (D. Ariz. 1990) ("[T]he court has identified the important fundamental interest in voting, but notes that voting absentee, is a privilege and a convenience for those unable to vote in person."). Nor has any court ever recognized a suspect class composed of individuals physically located inside the United States when mailing a ballot. Accordingly, the challenged deadlines "need only have a rational basis." *Leib*, 558 F.3d at 1306.

Rational basis review asks "(1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it. This standard is easily met." *Id.* In fact, "when conducting rational basis review," a court "will not overturn" legislation "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 85 (2000) (internal quotation marks omitted); *see McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961) (explaining that the Equal Protection Clause "is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective").

The challenged deadlines easily satisfy this standard. *First*, the purpose of the 10-day extension afforded to overseas voters furthers the unquestionably legitimate

purpose of ensuring compliance with federal law. Prior to 1980, *all* Florida ballots, including overseas absentee ballots, were counted only if received by the supervisor of elections before 7 p.m. on election day. *See Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1376 n.17 (S.D. Fla. 2004). In 1980, the federal government brought suit in this Court, alleging violation of the Overseas Citizens Voting Rights Act and the Federal Voting Assistance Act in that Floridians overseas "were being deprived of their right to vote because it was impossible for them to mail their absentee ballots from overseas in time to meet the 7 p.m. deadline on election day." *Id.* The litigation resulted in a consent decree pursuant to which the State promulgated Florida Administrative Code § 1S–2.013, ensuring that any absentee ballot cast "by an overseas elector which is postmarked or signed and dated no later than" the date of the election "shall be counted if received no later than 10 days from" the date of the election. *Id.* at 1369 n.11; *see id.* at 1376 n.17 ("[T]he court entered an order requiring the State of Florida to submit a revised plan of compliance which satisfied the consent decree. The second plan of compliance became a part of the Florida Administrative Code and was eventually renumbered as Fla. Admin. Code § 1S–2.013.").

"[T]he history surrounding the creation of § 1S–2.013 as a federally mandated exception to § 101.67(2) designed to render Florida's entire absentee ballot counting procedure in compliance with federal law" "do[es] not apply to domestic overseas

voters." *Id.* at 1376 n.17. Accordingly, in previous litigation, "[n]either the district court[s] nor the Eleventh Circuit appeared concerned that the exception in § 1S–2.013 only for overseas absentee voters created a violation of the equal protection rights of domestic absentee voters." *Id.* (citing *Harris v. Florida Elections Canvassing Comm.*, 122 F. Supp. 2d 1317, 1320 (N.D. Fla.2000); *Harris v. Florida Elections Comm.*, 235 F.3d 578, 578 (11th Cir. 2000)).

*Second*, as Leon County Supervisor of Elections Mark Earley testified, vote-by-mail ballots must first be mailed *to* voters and then, upon completion and signature, mailed *back* to elections personnel.[1] In the ordinary course, international mail is delivered more slowly because it typically must traverse substantially greater distances, is often handled by more than one delivery service, and is subject to additional customs and other screening procedures. And because of the additional steps inherent in the process of delivering international mail, there is greater potential for delay. The challenged classification—10 additional days for overseas ballots—therefore serves the legitimate state objective of mitigating the effect of those realities, which are unique to overseas voters and which, unlike the risk that domestic vote-by-mail ballots will arrive after their respective deadline, cannot be avoided by voting in person because, as Mr. Earley explained, overseas votes can

---

[1] Because Mr. Early testified just a few hours before the filing deadline set forth in the Court's expedited briefing schedule, a transcript of Mr. Early's testimony is not yet available.

only be cast via mail. Therefore, although not required by rational basis review, the challenged classification is closely tailored to the state's objective.

*Third*, the challenged classification serves the state's legitimate interest in reducing the administrative burden associated with tabulating vote-by-mail ballots. The State is, of course, not required by law to provide vote-by-mail ballots to domestic voters as an alternative to in-person voting. That the State *does* provide that accommodation entails additional administrative costs—for example, as Mr. Earley explained, the manpower necessary to verify and match even a small number of voters' signatures (187), as required by law. Mr. Earley explained that it would take his staff hours to process. Mr. Earley also testified that, in the 2018 General Election, his office received a total of 27,301 timely vote-by-mail ballots, approximately 25,000 of which were cast domestically, rather than overseas.

Importantly, if the Court were to order the State to count domestic vote-by-mail ballots received in the 10 days following Election Day, voters in future election cycles would be aware that they could delay mailing their ballots until the final minutes of Election Day, and it stands to reason that many of them would do so. Thus, in future election cycles, the number of vote-by-mail ballots to be counted in the weeks after Election Day could be in the tens of thousands, just in Leon County, rather than the mere 187 seen by Mr. Earley's office in 2018. That effort would entail hundreds of man hours reallocated to the time period when, as Mr. Earley explained,

staff are already overtaxed due to efforts regarding machine and manual recounts, verification of provisional ballots, and meetings with the canvassing board, among other crucial tasks. The State has a legitimate interest in avoiding that logjam and the potential for additional error that it entails, and that interest is furthered by the challenged provisions.

The significant burden Plaintiffs' requested constitutional ruling would have on future election officers—who might well have to count a large number of domestic vote-by-mail ballots that are sent by voters relying on this Court's ruling and that are received *after* election day, not just a relative handful of late ballots sent in the last few weeks in violation of the statutory deadline—is directly relevant to one of the most important prongs of the preliminary injunction analysis—likelihood of success on the merits. That is because, in assessing Plaintiffs' claim that the challenged statutes impermissibly burden the right to vote, this Court must assess the impact of Plaintiffs' proposed constitutional rule on all elections, not just the election that has just passed.

In addition, Plaintiffs discount the greater potential for error, electoral manipulation or fraud that might be present if election officials are required to count domestic vote-by-mail ballots post-marked by election day, insofar as postmarks might be illegible or fraudulently imposed by persons or groups seeking to alter the apparent outcome of an election whose preliminary results have already been

announced. The state might reasonably assign greater weight to that risk with respect to the potentially much larger number of domestic vote-by-mail ballots.

Finally, Plaintiffs are wrong to insist that a voter should take no responsibility for a ballot that is received after the expiration of the statutory deadline. Voters who choose to submit vote-by-mail ballots are warned that those ballots must be received no later than 7:00 p.m. on election day; all those voters could choose to vote in person or vote early to avoid the risk of delay in mailing; and voters may also use expedited courier service or even hand-delivery to minimize that risk as well. *See* § 101.67(2), Fla. Stat. (requiring only that ballots, to be counted, "must be received by the supervisor by 7 p.m. the day of the election," without specifying the mode of delivery).

## II. Plaintiffs Have Failed To Show That The Relief Sought Is Necessary To Prevent Irreparable Injury Or That The Threatened Injury Outweighs The Harm The Preliminary Injunction Would Cause.

As the Supreme Court has explained, "a party requesting a preliminary injunction must generally show reasonable diligence"; "[t]hat is as true in election law cases as elsewhere." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (citations omitted). Indeed, "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). That is because "the very idea of a *preliminary* injunction is premised on the need for

speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* Thus, "[c]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-cv-23905, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) (holding that three-month delay was "by itself sufficient grounds to deny [plaintiff's] request for an injunction") (internal quotation marks omitted); *see also Rodriguez v. Bryson*, No. 5:17-cv-10, 2018 WL 2750232, at *4 (M.D. Ga. June 7, 2018) (five-month delay "militate[d] against a finding of irreparable harm" (internal quotation marks omitted)).

Insofar as Plaintiffs challenge sections 101.6103(5)(c) and 101.67(2), Florida Statutes on the ground that they unduly burden the right to vote, the current versions of those statutes became law more than twenty years ago. *See* 1995 Fla. Sess. Law Serv. Ch. 95-147. And insofar as Plaintiffs contend that sections 101.6103(5)(c) and 101.67(2), Florida Statutes violate the Equal Protection Clause of the Fourteenth Amendment because another provision affords overseas voters additional time, the current version of that provision became law on July 1, 2016. *See* 2016 Fla. Sess. Law Serv. Ch. 2016-37. Plaintiffs therefore could have brought the same challenges presently before the court more than *two years* before the 2018 General Election, avoiding both (1) unnecessary interference with the election process and (2) the harm Plaintiffs insist they will suffer should this lawsuit proceed in the ordinary

course. At a minimum, "[i]n considering the balance of equities among the parties," Plaintiffs' "unnecessary, years-long delay in asking for preliminary injunctive relief weigh[s] against their request." *Benisek*, 138 S. Ct. at 1944.

In addition, Plaintiffs' requested remedy—dispensing with clearly established rules of which voters were aware, and replacing them with ad hoc rules promulgated by a federal court—would raise any number of equitable concerns. For example, some voters who obtained vote-by-mail ballots might have relied in good faith on the statutory deadline and opted *not* to mail a ballot that likely would not have been received before 7:00 p.m. on election night. *See* DE:42. Plaintiffs offer no reason why those citizens who relied in good faith on duly enacted statutory deadlines should be penalized vis-à-vis voters who belatedly mailed ballots in violation of the statutory deadline.

## III. Plaintiffs Have Failed To Show That The Preliminary Injunction Would Benefit The Public Interest.

The Supreme Court has held that "a due regard for the public interest in orderly elections support[s]" a "decision to deny a preliminary injunction and to stay the proceedings." *Benisek*, 138 S. Ct. at 1944-45. Faced with "inadequate time to resolve" disputes, the Supreme Court has, "of necessity," allowed elections "to proceed without an injunction suspending" challenged elections rules. *Purcell v. Gonzalez*, 549 U.S. 1, 5-6 (2006). Indeed, "applications for a preliminary injunction granting ballot access have been consistently denied when they threaten to disrupt

an orderly election." *Perry v. Judd*, 471 F. App'x 219, 227 (4th Cir. 2012) (citing cases). Plaintiffs offer no basis to deviate from that practice and set aside the public interest in orderly elections in this case, especially since any exigency was created solely by Plaintiffs' decision to wait until the election had passed to file their lawsuit.

**IV.  Should The Court Enjoin Florida's Vote-By-Mail Deadlines, The Attorney General Respectfully Requests A Stay Pending An Appeal to the Eleventh Circuit.**

Should the Court disagree and enjoin Florida's voting deadlines, the Attorney General respectfully requests, pursuant to Rule 8(a)(1) of the Federal Rules of Appellate Procedure, for a stay pending appeal to the Eleventh Circuit. In deciding whether to grant a stay, the Court considers the same factors for issuance of a preliminary injunction—"(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors are the "most critical." *Id*.

Those factors support a stay. Based on the foregoing analysis, the Attorney General submits that she is likely to succeed on the merits before the Eleventh Circuit. And "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."

*Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers); *accord Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018). Finally, equitable and prudential considerations strongly support Defendant's position that the recent election should be determined on the basis of clear rules enacted by the state Legislature before voters cast their ballots, not on the basis of new rules promulgated by a federal court after the votes have already been cast and preliminary results announced.

## CONCLUSION

For the foregoing reasons, Plaintiffs' emergency motion for a temporary restraining order and a preliminary injunction should be denied.

Respectfully submitted,

PAMELA JO BONDI
Attorney General

_____

/s/ *Edward M. Wenger*
EDWARD M. WENGER
Chief Deputy Solicitor General
Fla. Bar. No. 85568
Edward.Wenger@myfloridalegal.com

/s/ *Blaine H. Winship*
BLAINE H. WINSHIP
Special Counsel
Fla. Bar No. 356213
Blaine.Winship@myfloridalegal.com

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Tel.: (850) 414-3300
Fax: (850) 413-7555

## RULE 7.1(F) CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(F), I certify that according to the word count feature of the word-processing system used to prepare this document, the document contains 4593 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent by CM/ECF only to Counsel of Record this 15th day of November, 2018.


*/s/ Edward M. Wenger*
Edward M. Wenger