# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| VOTEVETS ACTION FUND; DEMOCRATIC NATIONAL COMMITTEE; and DSCC a/k/a DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE,<br><br>    Plaintiffs,<br><br>     v.<br><br>KENNETH W. DETZNER, in his official capacity as the Florida Secretary of State,<br><br>    Defendant,<br><br>and<br><br>NATIONAL REPUBLICAN SENATORIAL COMMITTEE; REPUBLICAN PARTY OF FLORIDA; PAM BONDI, in her official capacity as the Attorney General of Florida,<br><br>    Defendant-Intervenors. | Case No 4:18-cv-0524 |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

In this case, this Court heard testimony from Leon County Supervisor of Elections, Mark Earley, who confirmed that post office delivery hiccups have delayed delivery of materials from voters until after the applicable deadlines imposed by Florida's vote-by-mail procedure.

Like all other election laws affecting the exercise of the right to vote, Florida's vote-by-mail ("VBM") procedure must comport with constitutional guarantees that

protect Florida voters against arbitrary disenfranchisement and undue burdens on the right to vote. Having created a mechanism for voters to cast their ballots by mail, the State must administer it "rationally and equitably, without offense to independent constitutional prohibitions." *League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1217 (N.D. Fla. 2018). But the evidence presented to the Court in this case demonstrates that the State has failed to do just that. Voters who send their VBM ballots by mail have insufficient guarantees that their ballots will ever be counted because Florida law conditions the validity of such ballots on the date and time of receipt by the supervisor of elections and adheres to this standard even when ballots arrive, through no fault of the voters, days or weeks after they should. For these voters, who mail their ballots in advance of Election Day, their right to vote is conditioned entirely on a series of arbitrary events beyond their control.

Defendant's and Intervenors' (collectively, "Defendants") Opposition briefs cast aside, but fail to refute, clear evidence of ongoing disenfranchisement caused by blind enforcement of the 7 p.m. deadline. Instead, they insist that rules are rules, and that late votes do not count. But the constitution demands much more. When a State's application of rules or regulations threaten to deprive its citizens of their constitutional right to vote, those rules must yield absent a sufficient state interest.

That interest is lacking here because the narrow relief Plaintiffs seek[1]—to count ballots that were postmarked in advance of Election Day but were not delivered to the supervisor of elections before 7 p.m. on Election Day—does not prevent the State from enforcing deadlines, which would remain intact for all other VBM ballots that were simply mailed too late, nor does it impose any new burdens or requirements on election administration. As Leon County Supervisor of Elections Mark Earley testified, counting late-delivered ballots for the 2018 general election would at most add 178 VBM ballots to the over 20,000 ballots that Leon County received for the general election. Indeed, the remedy for the arbitrary disenfranchisement of those who vote by mail is neither novel or impractical: Fla. Stat. § 101.6952(5) allows supervisors of elections to count ballots post-marked by Election Day and received within 10 days after Election Day for overseas voters. Granting that relief would result in no real change to the State's election practices and procedures, just more eligible voters exercising the right to vote. The arguments Defendants have raised to avoid this common-sense solution to the arbitrary disenfranchisement of VBM voters should be rejected outright.

---

[1] Contrary to NRSC's assertion otherwise (ECF No. 47, at 2), the relief Plaintiffs seek is not facial because Plaintiffs do not ask for total invalidation of the relevant deadline.

# ARGUMENT

## A. Plaintiffs' Claims Are Not Barred.

### 1. Plaintiffs have standing.

The Republican Party's attempt to challenge Plaintiffs' standing fails as a matter of law. For one, the Democratic National Committee has standing to assert the rights of its candidates and voters. *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1078 (N.D. Fla. 2004). In a recent case challenging the rejection of ballots due to mismatched signatures, this Court has ruled that "Plaintiffs need not identify specific voters that are registered as Democrats who have had their VBM ballot rejected due to apparent mismatched signatures. . . . [I]t is enough that some inevitably have." *Democratic Executive Committee of Fla. v. Detzner et al.*, No. 4:18-cv-00520-MW-MJF, ECF No. 46, at 11 (N.D. Fla. Nov. 14, 2018) ("Signature Mismatch Order") (citing *Fla. Democratic Party v. Detzner*, No. 4:16-cv-607, 2016 WL 6090943 at *9-10 (N.D. Fla. Oct. 16, 2016)). It is similarly inevitable that members and supporters of DNC are among the voters whose VBM ballots were post-marked before Election Day but were not delivered by the statutory deadline. Moreover, Plaintiff Democratic National Committee and DSCC's candidate-members have standing to bring suits to assert the rights of voters, including themselves. *Cf. McLain v. Meier*, 851 F.2d 1045 (8th Cir. 1988) (holding that the candidate had standing in his capacity as a voter to challenge ballot access laws).

Finally, the Republican Party's argument that Plaintiffs have not shown actual injury is belied by the record, which contains a declaration written seven days after Election Day from a voter who mailed his VBM ballot *eight* days *before* Election Day, but was told by a clerk with the Miami-Dade Elections office two days after Election Day that his ballot still had not arrived and thus had not been counted in the November 6, 2018 election. ECF No. 27.[2, 3] Intervenor also ignores evidence that scores of voters are being disenfranchised for no other reason than mail delivery delays, including testimony from Mark Earley who confirmed that he and other staff members make trips on Election Day, after 6 p.m., to pick up ballots from mail facilities that otherwise would not have made its way to the supervisor of elections before 7 p.m. The injury to voters, and to Plaintiffs' interests and their missions, is clear.

---

[2] Moreover, the Republican Party's suggestion that Mr. Nielsen's "calculated inaction" should disenfranchise him is unreasonable given Mr. Nielsen's reasonable expectations about the VBM process: as he avers, he "considered going to [his] polling place to cast a provisional ballot in person, but recalled from a previous election, in which [his] absentee ballot was counted, that on election day the County Elections website did not reflect that fact. So [he] assumed that was the case for the November 6, 2018 election, as well." ECF. No. 27, at 2.

[3] Also, media reports suggest that USPS *still* has ballots sitting in its distribution facilities and is not timely delivering them, *see* Iannelli article cited at ECF No. 4-1, despite the window still being open for overseas VBM ballots to be received and tabulated.

5

### 2. Neither laches nor the *Purcell* principle bar Plaintiffs' claims.

Laches has no applicability to this case. First, laches does not apply when a plaintiff seeks prospective relief for continuing constitutional violations. *See Peter Letterese & Assocs. Inc., v. World Inst. of Scientology Enters. Int'l*, 533 F.3d 1287, 1321 (11th Cir. 2008) (stating that "laches serves as a bar only to the recovery of retrospective damage, not to prospective relief"). Nor has laches prevented courts in this Circuit from entering prospective injunctive relief in the time immediately before or after an election. *See* Signature Mismatch Order at 13 (citations omitted).

Further, laches requires not only a delay, but a delay that is both inexcusable and prejudicial, and this case presents none of those three factors. Here, there was no delay. Plaintiffs sought relief soon after their injuries materialized—voters realizing that their ballots post-marked *prior* to Election Day had been neither received nor tabulated by 7 p.m. on Election Day—which, by definition, could not have occurred until *after* 7 p.m. on Election Day. And Plaintiffs filed this lawsuit just days after reports of VBM ballots sitting, undelivered, in a post office facility in Opa-locka. *See* Jerry Iannelli, *Photos Show Scores of Uncounted Ballots in Opa-locka Mail Center*, (Nov. 9, 2018, 6:44 PM), MIAMI NEW TIMES,

https://www.miaminewtimes.com/news/miami-ballots-are-still-inside-opa-locka-post-office-10899192.[4]

Putting aside the fact that there has been no delay in challenging the ongoing disenfranchisement of Florida voters, "laches depends on more than inexcusable delay in asserting a claim; it depends on inexcusable delay causing undue prejudice to the party against whom the claim is asserted." *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 101 (5th Cir. 1978) (emphasis added) (holding that to establish prejudice, a party "must show a delay which has subjected him to a disadvantage in asserting and establishing his claimed right or defense, or other damage caused by his detrimental reliance on his adversary's conduct").

Here, Defendants' claims of prejudice are both unavailing and inconceivable. The Republican Party decries the fact that Plaintiffs' suit was not filed until November 12th, rather than on November 10th (ECF No. 49, at 9), but it identifies no conceivable prejudice that resulted from that two-day difference, nor could it. Moreover, a party invoking laches must demonstrate substantial prejudice that it has *itself* suffered. *Royal Palm Beach Colony*, 578 F.2d at 101. Defendants' claim that third parties (voters) would be prejudiced by potential confusion makes no sense. If Plaintiffs prevail, voters' experiences will be unchanged for all practical purposes—

---

[4] The Republican Party's cavalier suggestion that this "affect[ed] a few hundred votes at most," ECF No. 49, at 18, improvidently suggests that "a few hundred votes" are not worth protecting. They are.

except that they will suffer one less risk of having their valid vote senselessly tossed aside.

To hold that laches requires otherwise "would create a powerful and perverse incentive for plaintiffs to file premature and even frivolous suits to avoid the invocation of laches." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1285 (11th Cir. 2015). None of the authorities Defendants cite requires a different result. *See* Signature Mismatch Order at 16-20.

**B. The *Purcell* principle does not bar Plaintiffs' claims.**

The "*Purcell* principle," which is primarily concerned with pre-election changes in the law that create a risk of voter confusion, simply does not apply here. *Purcell* instructs courts to carefully consider court orders issued shortly *before* elections because "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam). This post-election-day lawsuit creates no such risk. If Plaintiffs prevail, the voter's experience will be unchanged. If anything, a system in which voters' ballots are rejected due to postal delay—through no fault of their own—breeds voter confusion and uncertainty. Voters like Kirk Nielsen remain perplexed as to how they can mail a ballot from Miami to the Miami-Dade County supervisor of elections *eight* days

before an election and still not have it be received in time to be counted. ECF No. 27.

### C. Plaintiffs' Have Shown a Likelihood of Success on the Merits.

Defendants' attempts to diminish the unconstitutional burden imposed by arbitrary disenfranchisement relies on inapt cases that are not binding on this court. They point to *Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004), a non-binding S.D. Fla. case, in which the district court held that delays in *receiving* VBM ballots from supervisors of elections did not impose an unconstitutional burden on the right to vote. *See id*. But a delay in receiving a ballot is of a different character than a delay in the delivery of a ballot. The former alerts the voter that he or she may need to make other plans to vote by Election Day; the latter—which is at issue here—subjects an already completed ballot to arbitrary treatment. Whether that ballot will count will depend in large part on the post office's delivery efforts, and the voter often will not know that they have been disenfranchised until it is far too late to do anything about it. Indeed, the court in *Friedman* noted that none of the plaintiffs requested a VBM ballot more than 12 days in advance. *See id*. at 1378. Similarly, *Goldsmith v. McDonald*, 32 So. 3d 713 (Fla. Ct. App. 2010), cited by Defendants, is not applicable here because it only addresses whether a VBM ballot substantially complied with the 7 p.m. receipt deadline statute when it was postmarked before the deadline. *See id*. The court issued no holding as to whether the 7 p.m. deadline

violated the federal constitutional right to vote under the United States Constitution, much less in circumstances outside of the voters' control.

Defendants next put the onus solely on voters to ensure that their VBM ballot timely arrives on time, yet this argument ignores that many responsible voters, like Mr. Nielsen, may do everything right and still do not have their ballot counted due to an arbitrary reason, like mail delay, over which they have no control. In this situation, courts have recognized a violation of the right to vote. *See Democratic Executive Committee of Fla.*, No. 4:18-cv-520-MW/MJF, at *28 (N.D. Fla. Nov. 15, 2018) (finding a right to vote violation when "potentially thousands of voters have been deprived of the right to cast a legal vote—and have that vote counted" for an arbitrary reason); *see also* Plfs.' Mot. For TRO at 10-12 (and cases cited therein); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986) ("The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights, such as the right to vote").

Finally, Defendants argue that Plaintiffs do not have a right to a limitless period for accepting VBM ballots, but this is contrary to, and entirely misconstrues, Plaintiffs' requested relief, which does not seek anything that Florida law does not already provide for overseas voters.[5]

---

[5] Intervenor NRSC points to the fact that the former Supervisor of Elections, Ion Sancho, would go to great lengths to ensure that VBM ballots were collected by the

## D. The State's Alleged Interests Do Not Outweigh the Burden Imposed on Plaintiffs' Right to Vote

Defendants collectively assert multiple state interests, but all are undercut because Florida already employs the relief Plaintiffs seek in another context. Defendants' argument that the Florida election code and recount statutes would be entirely upended by the relief Plaintiffs seek is overly dramatic and divorced from a reality in which election officials are still receiving and counting VBM ballots from overseas voters, without the parade of horribles that Defendants have advanced here. *See* Fla. Stat. § 101.6952(5).

Defendants also argue that supervisors of elections would face increased administrative burdens, which could possibly lead to more errors because they are tired. Even assuming such an explanation could justify disenfranchisement, the current Leon County Supervisor of Elections testified that counting the late-delivered ballots from the 2018 general election would only take around four hours. *See also* Decl. of Ion Sancho at ¶ 18. Further, as a matter of law, administrative inconvenience cannot justify deprivation of Plaintiffs' right to vote. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) (holding that "administrative convenience" cannot justify the deprivation of a constitutional right).

---

7 p.m. deadline, including by going to mail facilities himself on Election Day to "find what mail was ours," Declaration of Ion Sancho ("Sancho Decl.') at ¶ 15-17. But nowhere is this required by law, nor should the onus be on voters or elections officials to remedy delays caused by USPS.

Finally, Defendants attempt to distinguish the 10-day extension for Florida's overseas voters by arguing that it is required by federal statute. Coincidentally, federal law also ensures that Florida's VBM procedure cannot be applied arbitrarily or in a way that unconstitutionally burdens the right to vote. The State's interest in complying with federal law should extend to ensuring that the VBM process comports with constitutional requirements.

### E. Absent an Injunction, Plaintiffs and Florida Voters Will Suffer Irreparable Harm.

Irreparable harm will ensue to eligible Florida voters, including Plaintiffs' supporters, members, constituencies, and Plaintiffs themselves, in the absence of injunctive relief, and the various parties' arguments to the contrary do nothing to alter this fact. This Court has repeatedly recognized that the deprivation of the right to vote constitutes irreparable injury. *See* Signature Mismatch Order at 28-29; *FDP*, 2016 WL 6090943, at *8 ("[I]rreparable injury is presumed when '[a] restriction on the fundamental right to vote' is at issue.") (quoting *Obama For America v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012)); *see also* Plfs.' Mot. for TRO at 14-15. Further, as discussed above regarding laches and the "*Purcell* principle*,*" the contention that Plaintiffs waited too long to seek relief is meritless and is no reason to find a lack of irreparable harm. Plaintiffs filed this lawsuit to combat current and ongoing disenfranchisement, only apparent at earliest at 7 p.m. on Election Day, and there is

simply no authority which requires this Court to ignore the rejection of eligible ballots because the challenged law was in place prior to Election Day. Further, beyond the harm from disenfranchisement, Plaintiffs the Democratic National Committee and the DSCC would face additional irreparable harm through the frustration of their mission. *See Hunter v. Hamilton Cty. Bd. of Elecs.* 635 F.3d 219, 244 (6th Cir. 2011) ("The candidate who ultimately loses the election will suffer an irreparable and substantial harm.").

## F. The Balance of Hardships Weighs in Favor of An Injunction, which is in the Public Interest.

Defendants further wrongly argue that public confidence in the integrity of the electoral process would be undermined by Plaintiffs' requested relief. To the contrary, failing to grant an injunction would significantly harm confidence in the right to vote of eligible Florida voters who cast a VBM ballotin the November 6, 2018 election. *See Fish v. Kobach*, 309 F. Supp. 3d 1048, 1113 (D. Kan. 2018) ("If [individuals] who try to register to vote cannot be sure if they are in fact registered, particularly after they have been led to believe they complied with all registration laws, it erodes confidence in the electoral system.").

## G. The Remedy Plaintiffs Seek is Not Overly Broad

Finally, Defendants wrongly argue that the remedy that Plaintiffs seek is overly broad and point to a case in which this Court found that relief in only a few counties was adequate in response to a right to vote violation. But the hurricane harm

13

causing the harm was contained to the counties at issue in that case. *See Fla. Democratic Party v. Detzner*, No. 4:18-cv-463, at 2 (N.D. Fla. Oct. 10, 2018) (Secretary's voluntary extensions of a deadline only in counties where election offices had closed was adequate). Here, Plaintiffs seek harm that has occurred statewide. *See* ECF No. 4-1, at 5.

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court grant their emergency temporary restraining order and preliminary injunction.

Dated: November 15, 2018

Respectfully submitted,

/s/ *Marc Elias*
Marc E. Elias
Email: MElias@perkinscoie.com
Uzoma N. Nkwonta*
Email: UNkwonta@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

RONALD G. MEYER
Florida Bar No. 0148248
Email: RMeyer@meyerbrookslaw.com
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email: JBlohm@meyerbrookslaw.com
Meyer, Brooks, Demma and Blohm, P.A.

131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
(850) 878-5212

*Counsel for Plaintiffs*

*Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2018, I electronically filed the foregoing on behalf of the Plaintiffs with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

                                                Respectfully submitted,

                                                /s/ *Marc E. Elias*

                                                Marc E. Elias

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(F), I HEREBY CERTIFY that the enclosed reply brief of Plaintiffs contains approximately 3,346 words, which is fewer than the total words permitted by the rules of court. Counsel relies on the word count of the computer program used to prepare this memorandum.

Dated: November 15, 2018

    /s/ *Marc Elias*
Marc E. Elias
Email: MElias@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211