# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**VOTEVETS ACTION FUND,**
**DEMOCRATIC NATIONAL COMMITTEE,**
**and DEMOCRATIC SENATORIAL**
**CAMPAIGN COMMITTEE,**

    *Plaintiffs*,

v.                            Case No. 4:18cv524-MW/MJF

**KEN DETZNER, in his official**
**capacity as Florida Secretary**
**of State,**

    *Defendant*.

_____/

## ORDER DENYING PRELIMINARY INJUNCTION[1]

    This case involves Florida laws that allow overseas voters the opportunity to vote, and have their votes counted, 10 days after election day, yet require domestic vote-by-mail voters to vote, and have their votes counted, on election day.

---

[1] This Court recognizes that time is of the essence inasmuch as the supervisors of elections have received thousands of vote-by-mail ballots and the manual recount of votes is currently underway. Moreover, this Court wishes to afford the parties a meaningful opportunity to file an appeal. Accordingly, this order issues on an expedited basis.

1

I

Two provisions of Florida's election laws are at issue. The first provision prevents election officials from counting domestic vote-by-mail ballots they receive after 7 p.m. on the day of the election. § 101.6103(5)(c), Fla. Stat; *see also id.* § 101.67(2). That provision allows election officials to consider only the date and time a ballot arrives—not the date and time the voter postmarked the ballot. The second provision at issue allows election officials to count overseas voters' ballots if they are postmarked by election day and received by the supervisor of elections within 10 days of the day of the election. *Id.* § 101.6952(5). That provision allows election officials to consider both the date and time a vote-by-mail ballot is postmarked, and the date and time the vote-by-mail ballot is received.

The legal questions are two-fold: (1) whether the requirement domestic vote-by-mail ballots must be received by the supervisor of elections at 7 p.m. on election day places an undue burden on the right to vote; and (2) whether the ability of overseas voters to postmark their ballot on election day and have their ballots counted if the ballots arrive within 10 days of election deprives domestic vote-by-mail voters of their right to equal protection. Neither do.

II

Before turning to the merits, this Court must address some preliminary affirmative defenses raised by the Intervenor-Defendant, the National Republican Senatorial Committee ("NRSC"). They are laches and, for lack of a better term, the *Toney*-elections-diligence defense. Just as those arguments have failed in this Court before, they fail again.

First, laches. As this Court has recently stated, it is not clear whether laches applies when a plaintiff seeks prospective relief for continuing constitutional violations. *See, e.g., Garza v. Cty. of Los Angeles*, 918 F.2d 763, 772 (9th Cir. 1990); *see also Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters. Int'l*, 533 F.3d 1287, 1321 (11th Cir. 2008) (stating in a copyright case "laches serves as a bar only to the recovery of retrospective damage, not to prospective relief"). Laches is also a fact-intensive inquiry that requires a court to determine whether the delay is excusable based not only on the period of the delay, but the reasons for the delay. *See SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1345 (11th Cir. 1996). Laches does not apply to this case. The plaintiffs seek prospective relief, and the Plaintiffs had no reason to challenge the law until now.

Second, *Toney*. *Toney* undoubtedly states there is "a requirement of diligence," and that "the law imposes the duty on parties having grievances . . .

3

to bring the grievances forward for pre-election adjudication." *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973) (en banc).[2] But *Toney* also requires defendants in cases like this to "show by clear and convincing evidence that there was in fact a deliberate bypass of a pre-election judicial remedy" by a plaintiff. *Id.* at 315. *Toney* does not apply. Despite the fact these laws have been established for years, the Defendants did not show the Democratic Senatorial Campaign Committee, VoteVets Action Fund, or the Democratic National Committee "deliberately bypassed" a pre-election judicial remedy. The record is void of any such intention.

III

Though the Defendants' affirmative defenses fail, the Plaintiffs have not satisfied the requirements to obtain a preliminary injunction. Under Federal Rule of Civil Procedure 65, a district court may grant a preliminary injunction "only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234

---

[2] Fifth Circuit decisions prior to October 1, 1981 are binding within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

F.3d 1163, 1176 (11th Cir. 2000) (en banc). Although a "preliminary injunction is an extraordinary and drastic remedy," it nonetheless should be granted if "the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)). None of the elements, however, is controlling. Rather, this Court must consider the elements together, and a strong showing of one element may compensate for a weaker showing of another. *See Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ., & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979).

A

Plaintiffs have not shown a likelihood of success on the merits. Generally, state election laws that burden the fundamental right to vote are analyzed under the Supreme Court's *Anderson-Burdick* guidance. *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012). Under *Anderson* and *Burdick*, a court considering a challenge to a state election law "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interest put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.' " *Burdick v.*

5

*Takushi*, 504 U.S. 428, 434 (1992) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). When an election law imposes only reasonable, nondiscriminatory restrictions upon the constitutional rights of voters, the state's important regulatory interests are generally sufficient to justify the restrictions. *Id.*

In this case, the asserted injury is outweighed by the state's important regulatory interest. The alleged injury is that a voter's ballot may not be counted due to circumstances outside the voter's control. Namely, the vote-by-mail voter's ballot may not be counted due to the vagaries of the mail system. But this Court recognizes the state's need for some kind of deadline after which vote-by-mail ballots may not be counted. The state may not be the reason a vote-by-mail voter's ballot does not reach the ballot box in time. Similar problems remain with any deadline. The fact that there might be problems with the mail does not outweigh the state's important interest in delineating finality in elections. To hold otherwise could call into question the entirety of the vote-by-mail system itself. The restriction is reasonable, and the state's regulatory interest is sufficient to justify the deadline.

This Court recognizes other states provide a later deadline to count vote-by-mail ballots. The Plaintiffs have pointed this Court's attention to state statutes in Alaska, Iowa, Maryland, North Carolina, North Dakota, Texas, Washington, and West Virginia, all of which allow vote-by-mail or absentee

6

ballots to be counted after election day, or at least allow election officials to take into account the ballot's postmark date. *See* ECF No. 4-1, at 6. Those are unquestionably fairer, better systems. But a later or more lenient deadline in other states may not a constitutional violation make.

It does, however, lead this Court to the Plaintiffs' equal protection challenge. The law plainly imposes different deadlines for domestic and overseas voters to have their vote-by-mail ballots counted. But the 10-day extension for overseas voters is a "federally mandated exception . . . designed to render Florida's entire absentee ballot counting procedure in compliance with federal law . . ." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1376 n.17 (S.D. Fla. 2004). And the whole point of the 10-day exception for overseas voters is to give them the same right to vote as domestic voters.

Consider, for example, a uniformed voter on a desolate, isolated outpost in Afghanistan. When he or she receives care packages from family members back home in the United States, it is only because his or her family sent the package weeks before. And when his or her family receives a letter from that uniformed voter, it is only because that uniformed voter sent it weeks before as well. The same holds true for the uniformed voter's ballot.[3]

---

[3] The same presumably also holds true for Peace Corps workers in say, Papua New Guinea.

In sum, the deadline disparity does not deprive domestic voters of the opportunity to vote on equal terms with overseas voters. Just the opposite. The law gives overseas voters the opportunity to vote on equal terms with domestic voters. There is no substantial likelihood the Plaintiffs have established either an undue burden or an equal protection violation at this juncture.

B

Overall, the remaining factors do not weigh in the Plaintiffs' favor. Some voters very well may, as Plaintiffs suggest, have belatedly discovered their ballot did not arrive to the ballot box in time. As this Court has already noted, that is an obvious injury. But the balance of the equities lies in favor of the Defendants at this stage. These rules have been used for over a decade, and to enjoin the use of them now would create a substantial hardship on the Defendants and perhaps undermine the electoral process. Whether an injunction serves the public interest is not clear. The public has an interest in conclusive, orderly elections. But the voters have an interest in their ballot being counted. Thus, the last factor is not determinative.

On balance, the Plaintiffs have failed to make the necessary showing for the grant of a preliminary injunction. The motion to enjoin the use of Florida's

vote-by-mail deadlines is therefore **DENIED.**

    **SO ORDERED on November 16, 2018.**

                                       **s/Mark E. Walker**  
                                       **Chief United States District Judge**